1   Andrew F. Halaby, Bar No. 282519
    ahalaby@swlaw.com
2   **SNELL & WILMER L.L.P.**
    350 S. Grand Avenue, Suite 3100
3   Two California Plaza
    Los Angeles, CA  90071
4   Telephone:  213.929.2546
    Facsimile:   213.929.2525
5
    Attorney for Plaintiff
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  eMove, Inc., a Nevada corporation; U-      Case No.   **'17 CV0535 CAB JLB**
    Haul International, Inc., a Nevada
12  corporation,

13                    Plaintiff,              **COMPLAINT FOR
                                              DECLARATORY RELIEF AND
14          v.                                TO STAY ARBITRATION**

15  Hire A Helper LLC, a California limited    (Jury Trial Demanded)
    liability company; Michael Glanz, an
16  individual,

17                    Defendants.

18

19          Plaintiffs eMove, Inc. ("eMove") and U-Haul International, Inc. ("U-Haul"

20  and, with eMove, "Plaintiffs"), by and through their undersigned counsel, for their

21  Complaint against defendants Hire A Helper LLC ("HAH") and Michael Glanz,

22  allege as follows:

23                              **PARTIES**

24          1.      Plaintiff U-Haul is a Nevada corporation, with its principal place of

25  business in Phoenix, Arizona.

26          2.      Plaintiff eMove is a Nevada corporation, with its principal place of

27  business in Phoenix, Arizona.  eMove is a subsidiary of U-Haul.

28          3.      Defendant Hire A Helper LLC ("HAH") is a California limited

SNELL & WILMER
L.L.P.
LAW OFFICES
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

liability company, domiciled in California, and doing business nationally and internationally as www.hireahelper.com.

4.      Upon information and belief, defendant Michael Glanz is a resident of the state of California and the CEO and controlling owner of HAH.

## JURISDICTION AND VENUE

5.      This Court has original jurisdiction of this action as one between citizens of different states, where the value of Plaintiffs' intellectual property exceeds the amount in controversy requirement for diversity jurisdiction.  28 U.S.C. § 1332.

6.      This Court has jurisdiction to enter orders of injunction in this matter pursuant to A.R.S. § 44-402, A.R.S. § 12-1502(B), and other statutory and common laws of the United States and the laws of the State of Arizona.

7.      Venue is proper under 28 U.S.C. § 1391 because HAH and, upon information and belief, Glanz (collectively, "Defendants"), reside and are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND

### Plaintiffs' Websites and Protected Intellectual Property

8.      eMove operates an online marketplace for moving and self-storage products and services through emove.com.  In June 2002, eMove launched the first Internet-based marketplace that serves as a neutral clearinghouse and that connects consumers looking for moving services with moving service providers.   The marketplace is known as the "Moving Help® Marketplace," or simply, "Moving Help®."   Through the Moving Help® Marketplace website, accessible at www.movinghelp.com, consumers are able to reserve affordable, customer-rated products and services to fulfill their moving and self-storage needs.  For example, a consumer might use the Moving Help® Marketplace to hire movers to help load their rental truck or storage space.

9.      Service providers who wish to be connected with consumers through

the Moving Help® Marketplace can sign up within the Moving Help® Marketplace and agree to act as "Moving Helper®" auxiliary service providers.  Once a service provider signs up to be a Moving Helper® auxiliary service provider, the auxiliary service providers can then be selected by a customer to provide moving services.  For example, a moving company that has signed up to serve as a Moving Helper® auxiliary service provider may then be connected to a consumer that visits the Moving Help® Marketplace seeking movers.

10.    The Moving Help® Marketplace provides customers with names, prices, and customer reviews of registered Moving Helper® personnel.

11.    When a customer selects a service provider from among the available Moving Helper® personnel, the Moving Help® Marketplace notifies the Moving Helper® auxiliary service provider and provides the customer's contact information.  The Moving Helper® auxiliary service provider then makes direct contact with the customer to arrange details of the moving services to be provided.

12.    By virtue of creating the Moving Help® Marketplace site, U-Haul and eMove were vested with certain protected property rights, including protection from trademark infringement and unfair business practices.

13.    U-Haul is the registered owner of certain registered trademarks, including "Moving Help®" and "Moving Helper®."

14.    U-Haul granted eMove, its subsidiary corporation, the exclusive right to use, reproduce, publicly display, and distribute the registered trademarks "Moving Help®" and "Moving Helper®."

15.    The registered trademark "Moving Help®" was first used in commerce on or around May 3, 2002.  U-Haul first filed for registration of, and the United States Patent and Trademark Office registered, the trademark "Moving Help®" on November 19, 2001, and November 16, 2004, respectively.  A copy of U.S. Reg. No. 2,903,640 is attached as Exhibit A and constitutes *prima facie* evidence of ownership and the exclusive right to use the registered mark in connection with the

identified services.  15 U.S.C. § 1057(b).

16.    The registered mark "Moving Helper®" was first used in commerce on or around January 1, 2004.  U-Haul first filed for registration of, and the United States Patent and Trademark Office registered, the trademark "Moving Helper®" on October 19, 2005, and October 30, 2007, respectively.  A copy of U.S. Reg. No. 3,323,962 is attached as Exhibit B and constitutes *prima facie* evidence of ownership and the exclusive right to use the registered mark in connection with the identified services.  15 U.S.C. § 1057(b).

17.    U-Haul's trademarks, including Moving Help® and Moving Helper®, are service marks used in commercial sales and advertising of eMove's services to identify and distinguish the source of those services from the services and products of others.

18.    Certain aspects of the eMove Moving Help® Marketplace constitute trade secret information and processes that are the exclusive property of Plaintiffs that are entitled to protection under applicable law.

**Defendant Glanz Creates HAH**

19.    On or about July 20, 2005, defendant Glanz first submitted an application to become an eMove Moving Helper® auxiliary service provider within the Moving Help® Marketplace.  Shortly thereafter, on or about July 21, 2005, Glanz was accepted and activated as an eMove Moving Helper® auxiliary service provider.

20.    As part of his application to become a Moving Helper® auxiliary service provider, Glanz agreed to be bound by certain terms and conditions regarding the use of eMove's Moving Help® Marketplace.

21.    As a Moving Helper® auxiliary service provider, Glanz gained access to certain portions of the Moving Help® Marketplace that are not available to the general public.

22.    Approximately five months after Glanz became a Moving Helper®

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 1100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

auxiliary service provider, he had been offered twenty-seven jobs, refused twenty-three of the twenty-seven, and of the four he accepted completed only one. After discovering this extremely low rate of non-performance, eMove deactivated Glanz as a Moving Helper® auxiliary service provider on December 16, 2005.

23.   On or about July 25, 2006, HAH was formed under the laws of the State of California.

24.   Upon information and belief, HAH went live on the Internet at www.hireahelper.com in approximately July 2007.

25.   Upon information and belief, Glanz was involved in the formation of HAH and development of www.hireahelper.com.

26.   HAH's website provided virtually the same services through the same general functionality and features as the Moving Help® Marketplace, serving as a clearinghouse for connecting customers in need of moving services and moving service providers.   The site also engaged in unauthorized use of U-Haul and eMove's Moving Help® and Moving Helper® trademarks, original copy, and creative elements of eMove's websites.

**U-Haul and eMove Sue Glanz and HAH**

27.   On or about July 10, 2008, Plaintiffs filed suit against Defendants in the United States District Court for the District of Arizona, Case No. 08-1271-PHX-DGC, for, among other things, violations of the Lanham Act, Arizona common law unfair competition, and trade secret misappropriation under A.R.S. § 44-401 *et. seq.*, seeking injunctive relief and monetary damages ("Arizona Case").

28.   The Arizona Case was transferred to the Southern District of California and re-designated as Case No. 3:08-CV-1801-MLH NLS.  On April 13, 2009, the court granted Glanz and HAH's motion to compel arbitration and dismissed the case without prejudice.

29.   On December 28, 2009, Plaintiffs filed a Demand for Arbitration

against Defendants with the American Arbitration Association, Western Case Management Center, Case No. 73-133-Y-00007-10-JEMO, (the "2009 Arbitration") asserting claims for breach of contract, conversion, misappropriation of trade secrets under A.R.S § 44-401 *et. seq.*, registered trademark infringement, false designation of origin, copyright infringement, contributory and vicarious liability, common law unfair competition, common law fraud, intentional interference with a prospective business advantage, unjust enrichment, and aiding and abetting.  The Demand for Arbitration sought injunctive relief and monetary damages.

30.    The arbitrator issued a protective order (the "Protective Order") in the 2009 Arbitration on May 14, 2010.

31.    During discovery in the 2009 Arbitration, Defendants propounded special interrogatories to U-Haul.  Interrogatory No. 3 requested that U-Haul "Identify with particularity each of YOUR trade secrets that YOU claim were misappropriated or misused by RESPONDENTS or for which RESPONDENTS otherwise allegedly have liability."  U-Haul responded on July 29, 2010, and designated its response to Interrogatory No. 3 "Confidential – For Counsel Only – Subject to Protective Order" under the Protective Order in the 2009 Arbitration. The response was and, upon information and belief, remains protected as confidential.

32.    Approximately two months later, the parties entered into a Settlement Agreement and Mutual Release ("Settlement Agreement"), executed on October 1, 2010.  The Settlement Agreement is attached as Exhibit C.

33.    The Settlement Agreement fully and finally resolved the matters that were the subject of the 2009 Arbitration, and pursuant to the Settlement Agreement, Defendants agreed to dismissal of the 2009 Arbitration with prejudice.  Exhibit C, at Recital C, § 6.

**The Settlement Agreement**

34.    The Settlement Agreement provided that, by entering into the agreement, "the parties desire to resolve and compromise the disputes and claims framed by the Litigation, enter into a full and final settlement of all claims by and between them."    Exhibit C, at Recital C.    The defined term "Litigation" encompassed the Arizona Case that was transferred to the Southern District of California and resolved through settlement in the 2009 Arbitration. *Id.* at Recital A.

35.    As part of the settlement, the Defendants acknowledged Plaintiffs' intellectual property and Plaintiffs granted to HAH a license for use of certain of the Plaintiffs' trade secrets:

> 4.    <u>Respondents' Acknowledgement of Claimants' Intellectual Property Including the Payment Code.</u> Respondents hereby acknowledge Claimants' proprietary and ownership interest in the Trademarks, copyrights in Claimant's movinghelp.com website, trade secrets, Payment Code and Claimants other Intellectual Property. Claimants hereby grant Hire a Helper a perpetual, fully paid up, noncancellable, world wide, nonexclusive, nontransferable, nonsublicenseable license to use Claimants' trade secrets that existed when Glanz was a service provider for eMove and to which Glanz had access. Said license is solely for the use of said trade secrets as such is currently being used on the hireahelper.com website. Said license does not include a license to use the Trademarks or the Payment Code. Said license shall become effective as of the Effective Date. Respondents shall discontinue all use of the Payment Code and Trademarks prior to the Effective Date. Said license shall terminate upon the breach of this Settlement Agreement by Respondents or upon an attempted assignment, sub license or other transfer of this license by one or both Respondents. Respondents shall take reasonable steps to maintain the secrecy of Claimants' trade secrets. Other than the license granted in this Settlement Agreement, Respondents have no rights, title or interest in Claimants' Intellectual Property, including

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

the Payment Code and Trademarks. Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petition to cancel any application, registration, or re-registration of the Trademarks).

Exhibit C, at § 4.

36.     The Settlement Agreement provides that it can only be amended by a written agreement executed by all parties. Exhibit C, at § 8.4.

37.     The Settlement Agreement is fully integrated. Exhibit C, at § 8.7. The Settlement Agreement does not contain an arbitration clause. The Settlement Agreement provides that any disputes arising from the agreement "shall be brought in San Diego, California." Exhibit C, at § 8.9. The Settlement Agreement also requires application of Arizona substantive law. *Id.*

38.     The Settlement Agreement was effective September 30, 2010. Exhibit C, at 1.

39.     Pursuant to the Settlement Agreement, HAH made certain licensing payments to eMove. Exhibit C, at § 2

40.     Not until recently, despite the passage of more than half a decade since the inception of the licensing relationship under the Settlement Agreement, did Defendants assert any confusion or question the scope or enforceability of any of the terms set forth in the Settlement Agreement.

## Defendants Breach the Settlement Agreement

41.     Plaintiffs have since learned that, upon information and belief, Defendants are allowing, or imminently may allow, other entities besides HAH to utilize Plaintiffs' trade secret information. This activity is outside the scope of the license granted by the Settlement Agreement.

42.     In or around November 2016, Glanz approached Plaintiffs with

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

proposed amendments to the Settlement Agreement.  Plaintiffs did not agree to amend, or execute any amendment to, the Settlement Agreement.

43.     On or around February 8, 2017, Defendants improperly filed a Petition for Declaratory Relief ("Petition") under the 2009 Arbitration case number that Defendants agreed would be dismissed with prejudice seven years earlier.  The Petition is attached as Exhibit D.

44.     The Petition seeks four declaratory orders related to the interpretation, validity, or enforceability of the Settlement Agreement:  (1) that there are no trade secrets covered by the Settlement Agreement that Defendants must keep confidential, (2) that certain parties are not bound by the Settlement Agreement, (3) that Glanz need not attempt to prevent his future employers, other than HAH, from using Plaintiffs' trademarks, which the Petition also alleges are void and unenforceable, and (4) that the Settlement Agreement provision prohibiting Defendants from challenging Plaintiffs' intellectual property or trademarks is likewise void and unenforceable.  Exhibit D at 2-9.

45.     The instant dispute regarding the scope and enforceability of the Settlement Agreement is not subject to arbitration in the first instance because the parties did not include any agreement to arbitrate in the Settlement Agreement.

## COUNT I

**(For Declaratory Judgment that Defendants Breached the Settlement Agreement and the License Granted Thereunder Is Void)**

46.     Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

47.     Plaintiffs and Defendants entered into and executed a valid written contract, the Settlement Agreement.  Exhibit C.

48.     Defendants Michael Glanz and HAH signed the Settlement Agreement.  Exhibit C, at 6.

49.     Plaintiffs granted HAH certain license rights under the Settlement

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

Agreement.  Exhibit C, at § 4.

50.    The Settlement Agreement expressly provided that HAH's license "shall terminate upon breach of this Settlement Agreement" by Defendants. Exhibit C, at § 4.

51.    Defendants also agreed "not to oppose, challenge, or petition against the use or registration of" Plaintiffs' intellectual property, including Plaintiffs' registered trademarks Moving Help® and Moving Helper®."  Exhibit C, at § 4.

52.    In their Petition, Defendants claim that owners of an equitable interest in HAH and/or any party that purchases all or part of HAH's assets, save for Glanz, are not bound by the Settlement Agreement.  Exhibit D, at 4-5.

53.    Defendants agreed "on their own behalf and on behalf of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities and any entity in which any [defendant] owns any interest in (other than an insubstantial amount of stock ownership of an entity that is publicly traded on the NASDAQ, NYSE, or AMEX stock exchanges), interest in any trusts, interests in any estates, spouses, minor children, heirs, employees, agents, assigns and successors" not to use Plaintiffs' Moving Help® and Moving Helper® trademarks "in any manner (including any manner that might otherwise be deemed fair use of the trademarks 'MOVING HELP' and 'MOVING HELPER')."  Exhibit C, § 3.

54.    Defendants also agreed that they "shall not allow any Service Provider, affiliate or other party to use the phrases 'MOVING HELP' and 'MOVING HELPER' on any portion of any website controlled or operated by [Defendants]." Exhibit C, § 3.

55.    Defendants breached the Settlement Agreement by challenging Plaintiffs' registered trademarks Moving Help® and Moving Helper® when they filed the Petition for Declaratory Relief seeking a declaration that Plaintiffs' trademarks Moving Help® and Moving Helper® are unenforceable, and claiming that Defendants may use those marks without restriction and without regard to the

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

agreement not to do so. Defendants likewise are, upon information and belief, breaching by allowing others, or imminently will allow others, to use material covered by the license that was granted to HAH.

56.     The Petition, Defendants' challenge to the enforceability of certain Settlement Agreement terms, and Defendants' actual or imminently threatened conduct in facilitating the use by others of material not permitted by the parties' license agreement has created a case or controversy between Plaintiffs and Defendants.

57.     Defendants' breaches are material, having the legal effect of terminating the license granted to HAH under the Settlement Agreement. The license Plaintiffs granted HAH under the Settlement Agreement is, thus, now void.

58.     Plaintiffs have been damaged by Defendants' breaches.

59.     A judicial declaration that owners of any interest in HAH and/or any party that purchases all or part of HAH's assets, as well as Glanz individually or as an employee, are bound by the Settlement Agreement, and that Defendants breached the Settlement Agreement rendering the license granted thereunder terminated and void, is necessary and appropriate in order to resolve this controversy between the parties.

## COUNT II
### (For Declaratory Judgment that Defendants May Not Use or Disclose Plaintiffs' Trade Secrets)

60.     Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

61.     In the Settlement Agreement, Defendants acknowledged that Plaintiffs own a proprietary and ownership interest in the Plaintiffs' trade secrets, and licensed their use subject to certain limitations. Exhibit C, § 4.

62.     The trade secrets consist of one or more methods or processes that derive independent economic value from not being generally known to or readily

ascertainable through proper means by other persons. *See* A.R.S. § 44-401. Plaintiffs have engaged in reasonable efforts under the circumstances to maintain the secrecy of the trade secrets. *Id.*

63.     By executing the Settlement Agreement, Defendants acknowledged Plaintiffs' ownership of these trade secrets and received a license to utilize any such trade secrets only to the extent as set forth on the HAH website as of October 1, 2010.

64.     Defendants' contractual undertakings in the Settlement Agreement, as well as principles of estoppel, bind Defendants and any and all of their successors and assigns.

65.     Defendants' Petition, however, seeks a declaration that there are no trade secrets covered by the Settlement Agreement, and that Defendants are not required to take reasonable steps to maintain the confidentiality of Plaintiffs' trade secrets covered by the Settlement Agreement.  Exhibit D, at 2-4.

66.     Defendants' Petition gives rise to a case or controversy between Plaintiffs and Defendants.

67.     A judicial declaration that HAH, the owners of any interest in HAH and/or any party that purchases all or part of HAH's assets, as well as Glanz individually or as an employee, may not use or disclose Plaintiffs' trade secrets, is necessary and appropriate in order to resolve this controversy between the parties.

## COUNT III

### (For Declaratory Judgment that Plaintiffs' Registered Trademarks Moving Help® and Moving Helper® Are Enforceable)

68.     Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

69.     Moving Help® and Moving Helper®, U.S. Reg. No. 2,903,640 and U.S. Reg. No. 3,323,962, respectively, are registered trademarks, and Plaintiffs own and together have the exclusive right to use the registered marks in commerce or in

connection with certain uses as specified on the certificates.

70.     Plaintiffs have taken reasonable steps to enforce their registered marks, and have not forfeited or abandoned ownership of or exclusive right to use the Moving Help® and Moving Helper® marks as specified on the marks' registration certificates.

71.     Under the Settlement Agreement, Defendants acknowledged Plaintiffs' proprietary and ownership interest in, and agreed not to use or allow any vendor or affiliate of HAH to use, Plaintiffs' registered trademarks Moving Help® and Moving Helper®.  Exhibit C, at §§ 3, 4.

72.     Defendants, in their Petition, seek a declaration that § 3 of the Settlement Agreement is void and unenforceable, and other declarations related to Defendants' obligations related to the registered trademarks.

73.     Defendants' Petition and challenge to Plaintiffs' registered trademarks gives rise to a case or controversy between Plaintiffs and Defendants.

74.     A judicial determination that Plaintiffs' registered marks Moving Help® and Moving Helper® are enforceable is necessary and appropriate in order to resolve this controversy between the parties.

## <u>COUNT IV</u>

### **(Actual and Threatened Misappropriation, A.R.S. § 44-401 *et. seq.*)**

75.     Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

76.     Plaintiffs have certain intellectual property and proprietary information contained in the Moving Help® Marketplace and eMove's website not available to the general public.  Plaintiffs' proprietary information in eMove's website and the Moving Help® Marketplace constitutes trade secrets as defined in A.R.S. § 44-401(4).

77.     Plaintiffs have taken reasonable precautions to safeguard these trade secrets, including providing limited access to certain information, and under certain

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

terms and conditions.

78.     Defendants acknowledged in the Settlement Agreement the existence of and Plaintiffs' ownership interest in certain trade secrets.  Exhibit C, at § 4.

79.     Plaintiffs' trade secrets afford them a competitive advantage valuable to Plaintiffs.

80.     Plaintiffs, through the Settlement Agreement, permitted HAH to use certain trade secrets that existed when Glanz was a Moving Helper® service provider to which he had access during that time, subject to certain restrictions. Exhibit C, at § 4.

81.     Defendants threatened misappropriation through their filing of the Petition by claiming that Plaintiffs have failed to take reasonable precautions to maintain the secrecy of their trade secrets and asserting that Defendants have no duty to maintain the secrecy of Plaintiffs' trade secrets, among other allegations and claims, despite their contractual agreement in the Settlement Agreement to the contrary.  *See* Exhibit D.

82.     Defendants undertook a contractual duty to take reasonable steps to maintain the secrecy of Plaintiffs' trade secrets under the terms of the Settlement Agreement.  *Id.*

83.     Upon information and belief, Defendants misappropriated Plaintiffs' trade secrets by violating Defendants' duty and utilizing those trade secrets in operation of www.hireahelper.com after HAH's license terminated due to Defendants' breach of the Settlement Agreement.

84.     Upon information and belief, Defendants have misappropriated Plaintiffs' trade secrets by failing to take reasonable steps to maintain the secrecy of Plaintiffs' trade secrets in its partnerships, dealings, or cross-marketing relationships with other companies.

85.     Defendants' misappropriation and continued unauthorized use of Plaintiffs' trade secrets has caused Plaintiffs damages in an amount to be proven at

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

trial.

86.    Plaintiffs are entitled to injunctive relief and monetary damages. A.R.S. §§ 44-402, 403.

## COUNT V

### (Unfair Competition)

87.    Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

88.    Defendants interfered with Plaintiffs' prospective business advantage in a way that transcended the privilege of competition.

89.    Upon information and belief, Defendants are misappropriating or otherwise imminently will misappropriate proprietary and confidential information that includes Plaintiffs' trade secrets and other confidential business information, and are interfering with Plaintiffs' valuable competitive advantage by doing so.

90.    Defendants' actions violate Plaintiffs' common law rights and constitute unfair competition.

91.    As a direct and proximate result of Defendants' actions, Plaintiffs have suffered and continue to suffer irreparable damage to their business.

## COUNT VI

### (Application to Stay or Enjoin Arbitration, A.R.S. § 12-1502(B))

92.    Plaintiffs hereby reallege and incorporate by reference the preceding paragraphs of this Complaint as though fully set forth herein.

93.    Defendants Petition for Declaratory Relief was filed under AAA Case No. 73-133-Y-00007-10-JEMO.

94.    The Settlement Agreement constituted a full and final settlement of all claims in the 2009 Arbitration.  Exhibit C, at Recital C.  Indeed, the Settlement Agreement contains mutual releases which released any claims arising out of the parties' relationship prior to the execution of the Settlement Agreement.  *Id.* § 7.1.

95.    The Settlement Agreement does not contain any agreement to

1   arbitrate.

2       96.   The Defendants agreed in the Settlement Agreement to the dismissal

3   of the 2009 Arbitration was dismissed with prejudice.

4       97.   The claims alleged in this Complaint relate to and arise out of the

5   Settlement Agreement, which does not contain any agreement to arbitrate.

6       98.   Defendants' first request for declaratory relief in the Petition arises out

7   of the Settlement Agreement and requests an interpretation of the Settlement

8   Agreement related to Plaintiffs' trade secrets.  Defendants' alternative request arises

9   out of the Protective Order entered in the Arbitration, which likewise does not

10  contain any agreement to arbitrate.  Exhibit D, at 2-4.

11      99.   Defendants' second request for declaratory relief in the Petition seeks

12  a declaration related to the scope of the Settlement Agreement, which does not

13  contain any agreement to arbitrate.  Exhibit D, at 4-5.

14      100.  Defendants' third request for declaratory relief in the Petition seeks a

15  declaration related to a duty Defendants undertook in the Settlement Agreement to

16  refrain from utilizing Plaintiffs' registered trademarks Moving Help® and Moving

17  Helper® and a declaration related to the enforceability of Plaintiffs' marks Moving

18  Help® and Moving Helper® generally.  This request arises out of the Settlement

19  Agreement, which does not contain any agreement to arbitrate.  Exhibit D, at 5-8.

20      101.  Defendants' fourth request for declaratory relief in the Petition seeks a

21  declaration that a portion of § 4 of the Settlement Agreement is unenforceable and

22  void, and arises out of the Settlement Agreement, which does not contain any

23  agreement to arbitrate.  Exhibit D, at 8-9.

24      102.  In the event trial is necessary, Plaintiffs request a jury trial on all issues

25  triable to a jury, and have rights thereto under applicable law.

26      103.  Plaintiffs will suffer irreparable harm in the event the 2009 Arbitration,

27  or other related arbitration proceeding, is permitted to move forward now, for

28  which monetary damages would provide an insufficient remedy.  Plaintiffs are

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

entitled to a stay of the instant arbitration proceedings, and any other related arbitration proceeding, or in the alternative, injunctive relief permanently enjoining the arbitration proceeding.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs U-Haul International, Inc. and eMove Inc. pray for the following relief:

A.     For a preliminary and permanent injunction barring Defendants and their attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with Defendants, from utilizing, disclosing, or disseminating Plaintiffs' trade secrets;

B.     For a declaratory judgment that Defendants and their attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with Defendants, are bound by the restrictions of the Settlement Agreement, and are not entitled to the benefit of any license granted to Defendants thereunder, said license being terminated and void;

C.     For a declaratory judgment that Plaintiffs' trademarks Moving Help® and Moving Helper® are enforceable marks, and that Defendants and their attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with Defendants are barred from using these or any confusingly similar marks in advertising or promotion of services covered by United States Trademark Nos. 2,903,640 and U.S. Reg. No. 3,323,962;

D.     For direct, special, compensatory, and consequential damages in an amount to be proven at trial;

E.     For an order (1) staying the arbitration proceeding AAA Case No. 73-133-Y-00007-10-JEMO, and any other current or future arbitration proceeding

arising out of the Settlement Agreement between Plaintiffs and Defendants pursuant to A.R.S. § 12-1502 and on any other statutory or common law grounds under the laws of the United States and the state of Arizona,  or (2) in the alternative, for a preliminary and permanent injunction barring Defendants and their attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with Defendants, from instituting or maintaining any such arbitration proceeding, on any and all claims arising out of the Settlement Agreement;

     F.    For costs and attorneys' fees incurred by Plaintiffs pursuant to the Settlement Agreement, Exhibit C, at § 8.10, A.R.S. § 12-341.01 for matters arising out of contract, and any other applicable statutory or common law grounds under the laws of the United States and the state of Arizona; and

     G.    For such other relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all issues in this litigation that are triable to a jury.


Dated:     March 16, 2017     SNELL & WILMER L.L.P.


     By:/s/Andrew F. Halaby _____
       Andrew F. Halaby
       Attorney for Plaintiffs

4813-4397-6005

SNELL & WILMER
ATTORNEYS AT LAW
350 S. GRAND AVENUE, SUITE 3100
TWO CALIFORNIA PLAZA
LOS ANGELES, CA 90071

# EXHIBIT A

Int. Cls.: 35, 36, 37, and 39

Prior U.S. Cls.: 100, 101, 102, 103, 105, and 106

**United States Patent and Trademark Office**

Reg. No. 2,903,640
Registered Nov. 16, 2004

## SERVICE MARK
### PRINCIPAL REGISTER

## MOVING HELP

U-HAUL INTERNATIONAL, INC. (NEVADA CORPORATION)
2727 NORTH CENTRAL AVENUE
PHOENIX, AZ 85004

FOR: PROVIDING A WEB SITE, WHICH FEATURES ADVERTISEMENTS FOR THE SERVICES OF OTHERS ON A GLOBAL COMPUTER NETWORK; PROVIDING INFORMATION ABOUT THE SERVICES OF OTHERS VIA THE GLOBAL COMPUTER NETWORK, NAMELY, PROVIDING ON-LINE BUSINESS DIRECTORIES FEATURING MOVING AND RELOCATING SERVICES; PROVIDING SPACE AT A WEB SITE FOR THE ADVERTISEMENT OF THE SERVICES OF OTHERS, PROMOTING THE SERVICES OF OTHERS BY PROVIDING HYPERTEXT LINKS TO THE WEB SITES OF OTHERS, PROMOTING THE SERVICES OF OTHERS BY PROVIDING A WEB SITE AT WHICH USERS CAN LINK TO INFORMATION REGARDING MOVING AND RELOCATING; ADVERTISING SERVICES, NAMELY, DISSEMINATION OF ADVERTISING MATTER FOR OTHERS, PROVIDING ADVERTISING SPACE ON A WEB-SITE FOR THE ADVERTISEMENT OF THE GOODS AND SERVICES FOR OTHERS, RENTAL OF ADVERTISING SPACE, DISSEMINATION OF ADVERTISING OF OTHERS, VIA AN ON-LINE ELECTRONIC COMMUNICATIONS NETWORK, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 5-3-2002; IN COMMERCE 5-3-2002.

FOR: ONLINE TRANSACTION PROCESSING, NAMELY, PROVIDING CREDIT CARD TRANSACTION PROCESSING SERVICES, ELECTRONIC DEBIT TRANSACTIONS, AND ELECTRONIC CASH TRANSACTIONS AT A NEUTRAL VENUE AND VIA A DIGITAL CLEARINGHOUSE TO ASSIST INDEPENDENT BUYERS AND SELLERS OF MOVING RELATED GOODS AND SERVICES WITH PURCHASING AND SELLING SUCH GOODS AND SERVICES, IN CLASS 36 (U.S. CLS. 100, 101 AND 102).

FIRST USE 5-3-2002; IN COMMERCE 5-3-2002.

FOR: RENTAL OF CARPET CLEANERS, IN CLASS 37 (U.S. CLS. 100, 103 AND 106).

FIRST USE 5-3-2002; IN COMMERCE 5-3-2002.

FOR: RENTAL SERVICES, NAMELY, RENTAL OF AUTOMOBILE TOWING SYSTEMS, TRUCKS, VANS, VEHICLE LOADING RAMPS, HITCHES AND VEHICLE TOWING ACCESSORIES, MOVING BOXES, MOVING SUPPLIES, PADS, TOW BARS, DOLLIES, CARGO CARRIERS FOR VEHICLES, HAND TRUCKS, HAND JACKS, WAREHOUSE SPACE, STORAGE ROOMS, STORAGE SPACES, AND PARKING SPACES; STORAGE SERVICES, NAMELY, GENERAL STORAGE SERVICES, FURNITURE STORAGE SERVICES, CLOTHING STORAGE SERVICES; SELF-STORAGE SERVICES, NAMELY, PROVIDING RENTAL OF STORAGE FACILITIES FOR THE SELF-STORAGE OF GOODS BY OTHERS, IN CLASS 39 (U.S. CLS. 100 AND 105).

FIRST USE 5-3- 2002; IN COMMERCE 5-3-2002.

SN 76-340,358, FILED 11-19-2001.

LINDA POWELL, EXAMINING ATTORNEY

# EXHIBIT B

Int. Cl.: 35

Prior U.S. Cls.: 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,323,962
Registered Oct. 30, 2007

**SERVICE MARK**
**PRINCIPAL REGISTER**

# MOVING HELPER

U-HAUL INTERNATIONAL, INC. (NEVADA CORPORATION)
2727 NORTH CENTRAL AVENUE
PHOENIX, AZ 85004

FOR: PROVIDING A WEB SITE, WHICH FEATURES ADVERTISEMENTS FOR THE SERVICES OF OTHERS ON A GLOBAL COMPUTER NETWORK; PROVIDING INFORMATION ABOUT THE SERVICES OF OTHERS VIA THE GLOBAL COMPUTER NETWORK, NAMELY, PROVIDING ON-LINE BUSINESS DIRECTORIES FEATURING MOVING AND RELOCATING SERVICES; PROVIDING SPACE AT A WEB SITE FOR THE ADVERTISEMENT OF THE SERVICES OF OTHERS, PROMOTING THE SERVICES OF OTHERS BY PROVIDING HYPERTEXT LINKS TO THE WEB SITES OF OTHERS, PROMOTING THE SERVICES OF OTHERS BY PROVIDING A WEB SITE AT WHICH USERS CAN LINK TO INFORMATION REGARDING MOVING AND RELOCATING; ADVERTISING SERVICES, NAMELY, DISSEMINATION OF ADVERTISING MATTER FOR OTHERS, PROVIDING ADVERTISING SPACE ON A WEB-SITE FOR THE ADVER-

TISEMENT OF THE GOODS AND SERVICES FOR OTHERS, RENTAL OF ADVERTISING SPACE, DISSEMINATION OF ADVERTISING OF OTHERS, VIA AN ON-LINE ELECTRONIC COMMUNICATIONS NETWORK, IN CLASS 35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-1-2004; IN COMMERCE 1-1-2004.

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NO. 2,903,640.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "MOVING", APART FROM THE MARK AS SHOWN.

SER. NO. 78-736,229, FILED 10-19-2005.

JEFF DEFORD, EXAMINING ATTORNEY

EXHIBIT C

## SETTLEMENT AGREEMENT AND
## MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is entered into as of September 30, 2010 ("Effective Date") by and between U-Haul International, Inc., a Nevada corporation ("U-Haul") and eMove, Inc., a Nevada corporation ("eMove") (collectively "Claimants"), on the hand, and HIRE A HELPER LLC ("Hire a Helper") and MICHAEL GLANZ ("Glanz") (collectively "Respondents"), on the other hand. It is hereby agreed between the above parties as follows:

### RECITALS

A. On or about July 10, 2008, Claimants filed suit against Respondents in U.S. District, District of Arizona, Case No. 08-1271-PHX-DGC, which case was then transferred to the Southern District of California and assigned Case No. 3:08-CV-1801-MLH NLS. On or about April 13, 2009, the U.S. District Court, District of Southern California, dismissed the case and ordered the case be submitted to arbitration. On or about December 28, 2009, Claimants filed an arbitration demand with the American Arbitration Association, Western Case Management Center, Case No. 73 133 y 00007 10 jemo. The foregoing cases are collectively referred to herein as the "Litigation."

B. Definitions. The following terms have the meanings stated below.

"Code" means a word, letter, number, symbol or any combination of them.

"Intellectual Property" means property rights as an owner, registrant, author, inventor, applicant, licensee, assignee, grantee or otherwise in a copyright, trademark, patent, patent application, trade secret, invention, know how, method, process, writing, design or logo, whether filed, registered, applied for, or issued, or under common law.

"Job" means any use of (via Hire a Helper's website or otherwise) a system of Hire A Helper (or its successor or the purchaser of a substantial portion of its assets) or of Glanz (or any entity that that he is directly or indirectly involved, including as a officer, director, manager, owner [excluding the situation in which Glanz is involved only by owning an insubstantial amount of stock in an entity that is publicly traded on the NASDAQ, NYSE or AMEX stock exchanges], affiliate, partner, promoter, employee, agent, representative, consultant, investor, licensor, or licensee) in which a customer requests, orders, or otherwise offers to purchase a service(s) from a Service Provider(s).

A "Job" becomes a "Completed Job" when (1) the service that is scheduled commences, and (2) the job has not already been cancelled, stopped, suspended or otherwise called off by the customer or the Service Provider. If no date is scheduled for the service to begin, then a Job becomes a "Completed Job" 7 calendar days after it is requested. If the scheduled service is not commenced, and has not been cancelled by the customer, Service Provider or Respondents within 30 days after the last date scheduled for service, then the Job becomes a Completed Job.

"Payment Code" means a method or system of payment by which a customer arranges for a product or service from a Service Provider through an entity such as eMove or Hire A Helper, the customer makes a payment or deposit to the entity or its designee, the customer is issued, selects or creates a Code relating to the transaction or products or services purchased, and the customer's payment to the Service Provider or the Service Provider's designee is made only after the Code is subsequently given by the Service Provider to the entity through which the arrangement was made or the entities' designee.



"Service Provider" means a provider or vendor of a labor service.

"Trademarks" means that trademark "MOVING HELP," including its registration with the United States Patent & Trademark Office as No. 2,903,640, and that trademark "MOVING HELPER," including its registration with the United States Patent & Trademark Office as No. 3,323,962.

C. By entering into this Agreement, the parties desire to resolve and compromise the disputes and claims framed by the Litigation, enter into a full and final settlement of all claims by and between them.

**NOW, THEREFORE, in consideration of the mutual promises and forbearances set forth above, the parties to this Agreement agree as follows:**

1.    Recitals. The above recitals are incorporated by reference and are part of the parties' agreement.

2.    Payments and Reporting. In order to settle this matter, Respondents shall pay Claimants the sum of Five Dollars ($5.00) for each Completed Job from June 1, 2006, through August 31, 2013.

2.1    Hire A Helper shall keep true and accurate books and records of all Jobs and Completed Jobs. This Settlement Agreement is contingent on Respondents maintaining such books and records and the material accuracy of Respondents' representations as to the number of all Jobs and Completed Jobs.

2.2    Fifteen (15) days after the Effective Date, Respondents shall provide to Claimants a verified report, in writing substantially in the form of Exhibit A, of the number of Jobs and Completed Jobs from June 1, 2006, to the Effective Date.

2.3    Beginning on the fifteenth (15th) day of each calendar month after the Effective Date, and then on the fifteenth (15th) day of each calendar month thereafter, Respondents shall provide a verified report substantially in the form of Exhibit A showing the number of Jobs and Completed Jobs for the preceding calendar month.

2.4    Payment of the amounts owed for the period of June 1, 2006, to the Effective Date, shall be paid by Respondents to Claimants in eighteen equal installments each of $1/18^{th}$ of the total beginning on the fifteenth (15th) day of the first calendar month after the Effective Date and continuing on the fifteenth (15th) day of each calendar month thereafter until paid in full.

2.5    After the Effective Date, Respondents shall pay Claimants on or before the fifteenth (15th) day of each calendar month the amounts owed from the prior calendar month.

2.6    Audit. Claimants shall have the right but not the obligation no more often than every 6 months to engage an independent Certified Public Accounting firm of Claimants choosing and reasonably acceptable to Respondents to examine, inspect, and audit the number of Jobs and Completed Jobs using whatever means necessary, including without limitation inspection of financial records, accounting software, and books, to accurately determine the number of Jobs and Completed Jobs. Respondents shall assist and fully cooperate with accounting firm undertaking audit. If the audit reveals the total number of Jobs and/or Completed Jobs is more than the amount reported by Respondents, then Respondents shall pay Claimants the underpayment, plus 10% interest along with the next monthly payment due from Respondents. If the audit reveals the total number of Jobs and/or

9/30/19
v. 16                                        Page 2 of 7



Completed Jobs is less than the amount reported by Respondents, then Respondents shall accordingly adjust the next monthly payment due to Claimants. Other than reporting the total amount of Jobs and Completed Jobs, the accuracy of Respondents' reports, and, if needed, the providing of evidence of Respondents' failure to keep necessary records or accurately report the number of Jobs and Completed Jobs, the auditing firm shall keep confidential and not disclose to any party all other financial and any other information about Respondents designated by Respondents as confidential, and shall enter into a reasonable nondisclosure agreement with Respondents that is consistent with this paragraph.

2.7     Claimants shall bear the entire cost and expense of any such audit. However, in the event the audit reveals the number of Jobs and/or Completed Jobs reported by Respondents are underreported by ten percent (10%) or more for the audit period, then Respondents shall pay the entire reasonable cost of the audit within 30 days of demand by Claimants.

3.     Trademarks. U-Haul is the owner of the Trademarks, and has granted a license for the Trademarks to eMove. Respondents, on their own behalf and on behalf of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities and any entity in which any Respondent owns any interest in (other than an insubstantial amount of stock ownership of an entity that is publicly traded on the NASDAQ, NYSE or AMEX stock exchanges), interests in any trusts, interests in any estates, spouses, minor children, heirs, employees, agents, assigns and successors hereby covenant, stipulate and agree not to use the Trademarks in any manner (including any manner that might otherwise be deemed fair use of the trademarks "MOVING HELP" and "MOVING HELPER"). Respondents shall not allow any Service Provider, affiliate or other party to use the phrases "MOVING HELP" or "MOVING HELPER" on any portion of any website controlled or operated by Respondents.

4.     Respondents' Acknowledgement of Claimants' Intellectual Property Including the Payment Code. Respondents hereby acknowledge Claimants' proprietary and ownership interest in the Trademarks, copyrights in Claimant's movinghelp.com website, trade secrets, Payment Code and Claimants' other Intellectual Property. Claimants hereby grant Hire a Helper a perpetual, fully paid up, noncancellable, world wide, nonexclusive, nontransferable, nonsublicenseable license to use Claimants' trade secrets that existed when Glanz was a service provider for eMove and to which Glanz had access. Said license is solely for the use of said trade secrets as such is currently being used on the hireahelper.com website. Said license does not include a license to use the Trademarks or the Payment Code. Said license shall become effective as of the Effective Date. Respondents shall discontinue all use of the Payment Code and Trademarks prior to the Effective Date. Said license shall terminate upon the breach of this Settlement Agreement by Respondents or upon an attempted assignment, sublicense or other transfer of this license by one or both Respondents. Respondents shall take reasonable steps to maintain the secrecy of Claimants' trade secrets. Other than the license granted in this Settlement Agreement, Respondents have no rights, title or interest in Claimants' Intellectual Property, including the Payment Code and Trademarks. Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petitioning to cancel any application, registration, or re-registration of the Trademarks).

5.     Current Web Site. The parties stipulate and agree that Hire A Helper's website, www.hireahelper.com, as of October 4, 2010, with the licenses granted herein does not infringe any of Claimants' Intellectual Property rights.



6.     Dismissals of All Litigation. Within ten (10) days of the Effective Date, Claimants shall dismiss with prejudice the Litigation.

7.     Release.

7.1     Mutual Release. Except for the obligations set forth in this Agreement, the parties on behalf of themselves and on behalf of all of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities, interests in any trusts, interests in any estates, spouses, children, heirs, successors and assigns, unconditionally, irrevocably, absolutely and generally release and discharge each other, their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities, interests in any trusts, interests in any estates, spouses, children, heirs, successors, assigns, employees, agents, attorneys, accountants, and each of them, from any and all loss, liability, claims, demands, causes of action or suits of any type, related to the Litigation that were brought or that could have been brought in the Litigation and that occurred before the Effective Date of this Agreement. Each party will not pursue, and hereby waives, any claim for damages or other relief against the other party for the claims released herein.

7.2     Different Facts or Law. The parties to this Agreement acknowledge that they may discover facts or law different from, or in addition to, the facts and law they now know or believe to exist with respect to the claims released in this Agreement. The parties agree, nonetheless, that this Agreement and the releases contained in it shall be and remain effective in all respects, notwithstanding the discovery of any different or additional facts or law.

7.3     No Litigation. Each party represents that it has filed no action, nor have its attorneys, agents or representatives filed any lawsuit, charge, complaint, petition, claim, report or other accusatory pleading against the other party in any court or with any governmental agency or any arbitration tribunal of any kind, other than what is described in this Agreement.

8.     General Provisions.

8.1     Joint Representations and Warranties. Each of the parties represents and warrants, for the benefit of each of the other parties, that they are the owners of the interests and claims released herein and that such interests and claims have not been assigned, transferred or hypothecated, whether voluntarily or involuntarily, by subrogation, operation of law or otherwise, to any other person or entity. Such representations shall survive the full execution of the performance of this Agreement.

8.2     Interpretation. All of the parties to this Agreement are represented by counsel and have been represented by counsel throughout all negotiations, which preceded the execution of this Agreement, or have had the opportunity and chosen not to retain counsel. This Agreement has been reviewed by the parties and their respective attorneys, and the parties have had a full opportunity to negotiate its contents. All parties intend this Agreement to be complete and not subject to any claim of mistake. The parties expressly waive any common law or statutory rule of construction that any ambiguity shall be construed against the drafter of this Agreement and acknowledge that for purposes of any such rule all parties contributed equally to the drafting of this Agreement.

8.3     No Admissions. By entering into this Agreement, no party admits or concedes that it has any liability to any other party or is engaged, or is now engaging in, any unlawful conduct.



8.4    Amendments. This Agreement may be amended only by a written instrument executed by all parties.

8.5    Cooperation. The parties agree to do all things necessary, and to execute all further documents necessary and appropriate to carry out and effectuate the terms and purposes of this Agreement.

8.6    Successors and Assigns. This Agreement shall bind and inure to the benefit of the parties and their respective successors and assigns.

8.7    Entire Agreement. This Agreement is intended to constitute the entire agreement between the parties; except as mentioned herein, there are no collateral agreements or representations, written or oral.

8.8    Severability. Should it ever be finally adjudicated by a court of competent jurisdiction that any term of this Agreement is unenforceable, that term shall be deemed to be deleted. However, the validity and enforceability of the remaining terms shall not be affected by the deletion of the unenforceable term.

8.9    Applicable Law. The validity, interpretation and performance of this Agreement shall be construed and interpreted according to the laws of the State of Arizona. The parties agree that any action to enforce any of the terms of this agreement shall be brought in San Diego, California. A party intending to file such an action shall provide the other party notice in writing of its intent 15-days prior to any such filing.

8.10    Attorneys' Fees. Each party shall bear its own attorneys' fees and costs incurred up to and including the full execution of this Agreement. In any action at law or equity between the parties seeking enforcement of any of the terms and provisions of this Agreement, the prevailing party in such action shall be awarded, in addition to damages or other relief, all costs and expenses, including, but not limited to, actual attorneys' fees, expert witness fees, and all other statutory and non-statutory costs of litigation. Such recovery shall also include all such expenses and fees to enforce any judgment and on appeal, if any.

8.11    Counterparts. This Agreement may be executed in any number of duplicate counterparts, each of which shall be deemed to be an original and all of which shall be deemed to be one and the same document. When all parties have signed at least one such counterpart, this Agreement shall be deemed fully executed.

8.12    Time of the Essence. Time is of the essence in this Agreement.

### REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK.



9.   Signatures.   The parties hereto acknowledge that they have executed this Agreement willingly and without acting under duress.  Each person signing this agreement hereby warrants that he or she has been duly authorized to do so.  A signature sent by fax, email or other electronic means shall be as binding as an original.

WHEREFORE, the parties have executed this Agreement on the dates shown below.

"Claimants"                                                    "Respondents"

"U-Haul"                                                        "Hire a Helper"

U-Haul International, Inc., a Nevada          HIRE A HELPER LLC a California limited
corporation                                                    liability company

By: Samuel                                              By: Kenade
Printed Name: Samuel J. Shoen          Printed Name: Kenneth "Mike" Glanz
Its: Executive Vice President               Its: Managing Partner

Dated: 10/1/10                                        Dated: 10/1/10

"eMove"                                                        "Glanz"

eMove, Inc., a Nevada corporation
                                                                    MICHAEL GLANZ
By: Samuel

Printed Name: Samuel J. Shoen          Dated: 10/1/10
Its: President

Dated: 10/1/10

## Authorized Representative's Certificate
## Monthly Report

Pursuant to the Settlement Agreement entered into by U-Haul International, Inc. and eMove, Inc., on the one hand, and HIRE A HELPER LLC and MICHAEL GLANZ on the other hand, to settle the Litigation as defined in that Agreement.

I, Michael Glanz, Individually and as Managing Partner of Hire a Helper, hereby certify that the following report of the prior calendar month's Jobs and Completed Jobs, as those terms are defined in the Settlement Agreement, is true and accurate.

Number of "Jobs"                    _____ __

Number of "Completed Jobs"          _____

Executed this ____ day of _____, 20__.

By: _____
    Name: Kenneth Michael Glanz _____
    Individually and as Managing Partner of Hire a Helper LLC

Send To:        U-Haul International and eMove, Inc.
                c/o Brian Coxson and Steve Winkelman
                brian@movinghelp.com
                steve_winkelman@uhaul.com

Exhibit A



EXHIBIT D

1  DUANE S. HORNING (Bar No. 174995)
   TRACY L. SCHIMELFENIG (Bar No. 243714)
2  CALIFORNIA BUSINESS LAW GROUP, PC
   Symphony Towers
3  750 B Street, Suite 2330
   San Diego, CA  92101
   619-325-1555
4
   Attorneys for HIRE A HELPER LLC, a California
5  limited liability company; and MICHAEL GLANZ,
   Respondents
6

**RECEIVED**

FEB **1 3** 2017

**U-HAUL INTL
LEGAL DEPT**

7

8                  AMERICAN ARBITRATION ASSOCIATION

9                  WESTERN CASE MANGEMENT CENTER

10                  SAN DIEGO, CALIFORNIA LOCALE

11  U-HAUL INTERNATIONAL, INC., a          AAA CASE NO: 73 133 Y 00007 10 JEMO
    Nevada corporation; EMOVE, INC., a
12  Nevada corporation,

13            Claimants,                   PETITION FOR DECLARATORY RELIEF

14        v.

15  HIRE A HELPER, LLC, a California
    limited liability company; MICHAEL
16  GLANZ, an individual,

17            Respondents.

18

19

20

21        Respondents HIRE A HELPER LLC ("Hire a Helper") AND MICHAEL GLANZ

22  ("Glanz") (collectively "Respondents") hereby submit the following Petition for Declaratory

23  Relief.

                              **BACKGROUND**
24
25        1.      On or about July 10, 2008, Claimants, U-Haul International, Inc., a Nevada

26  corporation ("U-Haul") and eMove, Inc., a Nevada corporation ("eMove") (collectively

27  "Claimants") filed suit against Respondents in the U.S. District, District of Arizona, Case No. 08-

28

**CBLG**

                                         1

Kristine Campbell, legal Dept.
2-14-17M

1271-PHX-DGC, which was then transferred to the U.S. District, Southern District of California and assigned Case No. 3:08-CV-1801-MLH NLS.

2.       On or about April 13, 2009, the U.S. District Court, District of Southern California dismissed the case and ordered the case be submitted to arbitration.

3.       On December 28, 2009, Claimants filed a Demand for Arbitration against Respondents before the American Arbitration Association, Western Case Management Center, which was assigned AAA Case No. 73 133 Y 00007 10 JEMO ("Arbitration").

4.       On January 21, 2010, Respondents filed their Answering Statement.

5.       The Arbitrator issued a Protective Order dated May 14, 2010 ("Protective Order").

6.       On September 30, 2010, the parties settled the Arbitration by entering into a Settlement Agreement and Mutual Release ("Settlement Agreement").  A true and correct copy of the Settlement Agreement is attached hereto as Exhibit A.

7.       Controversies have arisen and now exist between Respondents and Claimants concerning their respective rights and obligations under the Arbitrator's Protective Order and settlement of the Arbitration.

8.       Respondents seek declaratory relief with respect to the Arbitrator's Protective Order and the Settlement Agreement, and modification of the Protective Order.  A declaration and modification are necessary and appropriate at this time to resolve these matters.

**FIRST REQUEST FOR DECLATATORY RELIEF**

**(Trade Secrets)**

9.       Respondents hereby incorporate by reference Paragraphs 1 through 8 as if fully restated herein.

10.      Claimants' claims in the Arbitration included, *inter alia*, certain claims with respect to Claimants' alleged trade secrets.

11.      Respondents propounded interrogatories to Claimants, including Special Interrogatory No. 3, which asked, "Identify with particularity each of YOUR trade secrets that YOU claim were misappropriated or misused by RESPONDENTS or for which RESPONDENTS otherwise allegedly have liability."  Claimants served a response on Respondents' counsel, but

designated it "Confidential – For Counsel Only – Subject to Protective Order."  Claimants have never identified to Respondents, as distinguished from Respondents' counsel, what if any are Claimants' alleged trade secrets.

12.     Paragraph 4 of the Settlement Agreement states:

> 4.     Respondents' Acknowledgement of Claimants' Intellectual Property Including the Payment Code.  Respondents hereby acknowledge Claimants' proprietary and ownership interest in … Claimant's … trade secrets, Payment Code and Claimants' other Intellectual Property.  Claimants hereby grant Hire a Helper a perpetual, fully paid up, noncancelable [sic], world wide, nonexclusive, nontransferable, nonsublicenseable license to use Claimants' trade secrets that existed when Glanz was a service provider for eMove and to which Glanz had access.  Said license is solely for the use of said trade secrets as such is currently being used on the hireahelper.com website.  Said license does not include a license to use the Trademarks or the Payment Code.  Said license shall become effective as of the Effective Date.  Respondents shall discontinue all use of the Payment Code and Trademarks prior to the Effective Date.  Said license shall terminate upon the breach of this Settlement Agreement by Respondents or upon an attempted assignment, sublicense or other transfer of this license by one or both Respondents.  Respondents shall take reasonable steps to maintain the secrecy of Claimants' trade secrets.  …

13.     Respondents have never known, and still do not know, what are the matters that allegedly constitute Claimants' trade secrets covered by the Settlement Agreement, if any.

14.     Respondents do not believe they now know or have ever known any matter that constitutes Claimants' trade secrets, including any alleged trade secrets covered by the Settlement Agreement.

15.     Respondents are informed and believe, and contend, that there are no trade secrets covered by the Settlement Agreement, that any information that constituted Claimants' trade secrets and was known to Respondents, if any, ceased being a trade secret because of Claimants' disclosure or failure to take reasonable precautions to maintain the confidentiality of the information, and that Respondents have no duty to maintain as confidential any matter as Claimants' trade secrets under the Settlement Agreement or otherwise.

16.     Respondents are informed and believe that Claimants contend that there are matters that allegedly constitute Claimants' trade secrets, that are covered as such by the

CBLG

3

1   Settlement Agreement, and that Respondents are required to take reasonable steps to maintain the
2   secrecy of the Claimants' alleged trade secrets.

3       17.     Respondents request that the Arbitrator declare that there are no trade secrets
4   belonging to Claimants covered by the Settlement Agreement, and that Respondents are not
5   obligated to maintain as confidential any matters as Claimants' alleged trade secrets.

6       18.     If there are any of Claimants' trade secrets covered by the Settlement Agreement,
7   it is impossible for Respondents to protect Claimants' alleged trade secrets when Respondents do
8   not know what they are.  Therefore, in the alternative, Respondents request that the Arbitrator
9   modify the Protective Order to delete the "For Counsel Only" provisions, remove the "For
10  Counsel Only" designation from Claimants' Response to Special Interrogatory No. 3, and permit
11  Respondents' counsel to disclose the response to Respondents.  The removal of the "For Counsel
12  Only" provisions and designation would *not* remove the "Confidential" designation.  Respondents
13  would be required to maintain the response as Confidential as stated in the Protective Order.
14  Respondents also request that the Arbitrator declare that Respondents are not using any of
15  Claimant's trade secrets on Respondents' website.

16              **SECOND REQUEST FOR DECLATATORY RELIEF**
17              **(Parties Bound by Settlement Agreement)**

18      19.     Respondents hereby incorporate by reference Paragraphs 1 through 18 as if fully
19  restated herein.

20      20.     Respondents contend that those who are owners of all or any part of HAH's
21  equitable interests, other than Glanz, are not parties to the Settlement Agreement and are not
22  bound by it.  Those not bound include all current and future limited liability company members of
23  HAH, and owners of its stock if it should ever be converted to a corporation, other than Glanz.

24      21.     Respondents contend that any party that purchases all or any part of HAH's assets,
25  other than Glanz, are not parties to the Settlement Agreement and are not bound by it.

26      22.     Respondents acknowledge that if HAH merges with another entity, the surviving
27  entity is a successor to the Settlement Agreement and is bound by it, and do not contend
28  otherwise.



4

23.     Respondents are informed and believe that Claimants may dispute one or more of Respondents' contentions stated above in this Second Request for Declaratory Relief.

24.     Respondents request that the Arbitrator declare that Respondents' contentions stated above in this Second Request for Declaratory Relief are correct.

### THIRD REQUEST FOR DECLATATORY RELIEF

### (Trademarks)

25.     Respondents hereby incorporate by reference Paragraphs 1 through 24 as if fully restated herein.

26.     The Settlement Agreement states on Page 2:

> "Trademarks" means that trademark "MOVING HELP," including its registration with the United States Patent & Trademark Office as No. 2,903,640, and that trademark "MOVING HELPER," including its registration with the United States Patent & Trademark Office as No. 3,323,962.

27.     Paragraph 3 of the Settlement Agreement states:

> 3. Trademarks.  U-Haul is the owner of the Trademarks, and has granted a license for the Trademarks to eMove. Respondents, on their own behalf and on behalf of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities and any entity in which any Respondent owns any interest in (other than an insubstantial amount of stock ownership of an entity that is publicly traded on the NASDAQ, NYSE or AMEX stock exchanges), interests in any trusts, interests in any estates, spouses, minor children, heirs, employees, agents, assigns and successors hereby covenant, stipulate and agree not to use the Trademarks in any manner (including any manner that might otherwise be deemed fair use of the trademarks "MOVING HELP" and "MOVING HELPER").  Respondents shall not allow any Service Provider, affiliate or other party to use the phrases "MOVING HELP" or "MOVING HELPER" on any portion of any website controlled or operated by Respondents.

28.     Respondents entered into the Settlement Agreement based on Claimants' representations and contentions that the terms "MOVING HELP" and "MOVING HELPER" were valid trademarks, that U-Haul was the owner of the trademarks subject only to a license to its affiliate and co-Claimant eMove, and that Claimants alone had the exclusive right to use the terms as to all the world.  The parties entered into the Settlement Agreement with the intent and



5

1   understanding that Claimants alone would have exclusive rights, as to all the world, to the use the

2   terms "MOVING HELP" and "MOVING HELPER," and that Claimants would take steps to

3   enforce such purported rights just as they had done with Respondents. However, Claimants have

4   failed to enforce their alleged trademark rights to exclusive use of the terms. The terms are now

5   used universally throughout the moving industry, other than by Respondents. Claimants' failure

6   to enforce their alleged trademark rights have resulted in a forfeiture and an abandonment of any

7   trademark and exclusive rights by Claimants in the terms, "MOVING HELP" and "MOVING

8   HELPER." Claimants' failure to enforce their alleged trademark rights in "MOVING HELP" and

9   "MOVING HELPER" has frustrated the purpose and intent of the Settlement Agreement.

10          29.     The prohibition in the Settlement Agreement on Respondents' use of the terms

11   "MOVING HELP" and "MOVING HELPER" was predicated on those terms having actual

12   protected trademark status. Since they do not, the terms prohibiting Respondents' use of them are

13   void and unenforceable.

14          30.     Paragraph 8.5 of the Settlement Agreement states, "Cooperation. The parties

15   agree to do all things necessary, and to execute all further documents necessary and appropriate to

16   carry out and effectuate the terms and purposes of this Agreement." ("Further Assurances

17   Clause.")

18          31.     As with all contracts, the Settlement Agreement also contained an implied

19   covenant of good faith and fair dealing ("Implied Covenant"). The Implied Covenant obligates

20   each party not to do anything, or refrain from doing anything, that would deprive the other party

21   of the benefits of the Settlement Agreement.

22          32.     The Further Assurances Clause and the Implied Covenant obligated the Claimants

23   to treat the terms MOVING HELP" and "MOVING HELPER" as trademarks including without

24   limitation by enforcing Claimants' alleged trademark rights against others so as to maintain

25   Claimant's alleged exclusive right to use them. Claimants' failure to do so constitutes breaches

26   of the Further Assurances Clause and the Implied Covenant, which excuses Respondents from

27   any obligation not to use the terms MOVING HELP" and "MOVING HELPER," at least as

28

CBLG

1  generic and descriptive terms in a manner that are not trademarks to identify Respondents as a

2  provider of goods or services.

3      33.    Respondents contend that Paragraph 3 of the Settlement Agreement is void and

4  unenforceable, and that Respondents are otherwise not prohibited from using the terms

5  "MOVING HELP" or "MOVING HELPER" as generic or descriptive terms, including on HAH's

6  website, and including as ad word search terms.  Such use is permitted so long as the terms are

7  not used as trademarks, i.e., using the terms to identify HAH, its successors or assigns as a source

8  of goods or services.

9      34.    Solely in an abundance of caution and in exercise of good faith to ensure

10 compliance with the Settlement Agreement, Respondents have gone so far as to negatively match

11 the terms "MOVING HELP" and "MOVING HELPER" in paid internet advertising.

12 Respondents' negative matching is not an admission that the practice was required, and

13 Respondents do not now concede as much.  Respondents contend that even if Paragraph 3 of the

14 Settlement Agreement is valid and enforceable, or that Respondents would otherwise be

15 prohibited from using the terms "MOVING HELP" or "MOVING HELPER," that Respondents

16 are not required to negatively match the terms used in paid internet advertising.

17     35.    Respondents are informed and believe that Claimants may dispute one or more of

18 these contentions by Respondents.

19     36.    Respondents request that the Arbitrator declare that Paragraph 3 of the Settlement

20 Agreement is void and unenforceable, that Respondents are excused from any obligation not to

21 use the terms "MOVING HELP" or "MOVING HELPER," and that Respondents may use the

22 terms "MOVING HELP" and "MOVING HELPER" at least as generic or descriptive terms

23 including without limitation on Respondents' website and as ad word search terms, so long as the

24 terms are not used as trademarks, i.e., using the terms to identify Respondents as a source of

25 goods or services.  Respondents further request that the Arbitrator declare that Respondents are

26 not required to negatively match "MOVING HELP" or "MOVING HELPER" in paid internet

27 advertising.

28

CBLG

37.     Glanz is currently Hire a Helper's CEO.  Glanz may in the future work as an employee for employers other than Hire a Helper.  It was not the intent of the parties that the Settlement Agreement restrict Glanz' employment by others, and indeed, such a restriction would be void as against public policy.  Glanz' future employers may use the terms "MOVING HELP" or "MOVING HELPER," and Glanz would have no control over such use by his employer.

38.     Respondents contend that the Settlement Agreement does not make Glanz responsible to prevent or attempt to prevent any entity for which Glanz is an employee from using the terms "MOVING HELP" or "MOVING HELPER," other than Hire a Helper, a successor by merger to Hire a Helper, or an entity where Glanz owns a majority equitable ownership interest. Respondents are informed and believe that Claimants may dispute Respondents' contention.

39.     Respondents request that the Arbitrator declare that the Settlement Agreement does not make Glanz responsible to prevent or attempt to prevent any entity for which Glanz is an employee from using the terms "MOVING HELP" or "MOVING HELPER," other than Hire a Helper, a successor by merger to Hire a Helper, or an entity where Glanz owns a majority equitable ownership interest.

### FOURTH REQUEST FOR DECLATATORY RELIEF
### (Nonopposition Clause)

40.     Respondents hereby incorporate by reference Paragraphs 1 through 39 as if fully restated herein.

41.     The final sentence of Paragraph 4 of the Settlement Agreement states, "Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petitioning to cancel any application, registration, or re-registration of the Trademarks)" ("Nonopposition Clause").

42.     The Nonopposition Clause is void and unenforceable as against public policy, as purporting to prevent the appearance and participation in government process in the United States

Patent and Trademark Office, any other patent or trademark office, court, administrative or other government body.

43.     The Nonopposition Clause is void and unenforceable as unintelligible, vague, ambiguous and overbroad.

44.     The Nonopposition Clause is void and unenforceable because it would purport to prevent Respondents from using and prosecuting intellectual property rights with respect to Respondents' own intellectual property if Claimants were to attempt to claim, use or prosecute protection or registration of Respondents' intellectual property as Claimants' own.

45.     Respondents contend the Nonopposition Clause is void and unenforceable, and are informed and believe that Claimants may contend the Nonopposition Clause is valid and enforceable.

46.     Respondents request that the Arbitrator declare that the Nonopposition Clause is void and unenforceable in whole, or in the alternative is valid only in such part and interpretation as the arbitrator may determine.

### PRAYER FOR RELIEF

WHEREFORE, Respondents pray for an award to be rendered in their favor and against each of the Claimants, jointly and severally, as follows:

1.     Declaratory relief as requested above;

2.     Modification of the Protective Order as requested above;

3.     Attorneys' fees and costs; and

4.     Such other relief as the arbitrator determines to be just and proper.

DATED: February 8, 2017

CALIFORNIA BUSINESS LAW GROUP, PC

By _____
     DUANE S. HORNING
     TRACY L. SCHIMELFENIG
     Attorneys for Respondents HIRE A HELPER
     LLC and MICHAEL GLANZ

CBLG

1    DUANE S. HORNING (Bar No. 174995)
     TRACY L. SCHIMELFENIG (Bar No. 243714)
2    CALIFORNIA BUSINESS LAW GROUP, PC
     Symphony Towers
3    750 B Street, Suite 2330
     San Diego, CA 92101
4    Tel: 619-325-1555
     Fax: 619-325-1559
5

6    Attorneys for HIRE A HELPER LLC, a California
     limited liability company; and MICHAEL GLANZ,
7    Respondents

8

9              AMERICAN ARBITRATION ASSOCIATION

10            WESTERN CASE MANGEMENT CENTER

11               SAN DIEGO, CALIFORNIA LOCALE

12

13    U-HAUL INTERNATIONAL, INC., a     AAA CASE NO: 73 133 Y 00007 10 JEMO
     Nevada corporation; EMOVE, INC., a
14    Nevada corporation,

15          Claimants,                PROOF OF SERVICE

16         v.

17    HIRE A HELPER, LLC, a California
     limited liability company; MICHAEL
18    GLANZ, an individual,

19          Respondents.

20

21

22       I, Grant Gardner, declare that:

23       I am over the age of eighteen years and not a party to the action. I am employed in the

County of San Diego, California, within which county the subject mailing occurred. My business
24
address is Symphony Towers, 750 B Street, Suite 2330, San Diego, California 92101. I am
25
familiar with the business' practice for collection and processing correspondence for mailing with
26
the United States Postal Service, and that the correspondence shall be deposited with the United
27

28

                      1

1   States Postal Service this same day in the ordinary course of business.  On February 8, 2017, I

2   served the following document(s):

3        1.     PETITION FOR DECLARATORY RELIEF

4

5   (X)   by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Diego, California addressed as set forth.

6

7   ( )   by placing the document(s) listed above in a sealed envelope with Federal Express, fully prepaid, in San Diego, California, addressed as set forth.

8   U-Haul International, Inc.
    Emove, Inc.

9   c/o Stephen R. Winkelman, Esq.
    Assistant General Counsel

10  U-Haul International, Inc.
    2727 North Central Avenue

11  Phoenix, AZ  85004

12

13       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on February 8, 2017.

14

15  Grant Gardner

16

17

18

19

20

21

22

23

24

25

26

27

28

2