UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EMOVE, INC., a Nevada corporation, and U-HAUL INTERNATIONAL INC., a Nevada corporation,

Plaintiffs,

v.

HIRE A HELPER LLC, a California limited liability company, and MICHAEL GLANZ, an individual,

Defendants.

Case No.: 17cv0535-CAB-JLB

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 63]**

On November 22, 2017, Defendants Hire A Helper LLC ("HAH") and Michael Glanz ("Glanz") filed a motion for summary judgment ("MSJ") on Plaintiffs' Second Amended Complaint ("SAC"). [Doc. No. 63.] On December 13, 2017, Plaintiffs eMove, Inc. ("eMove") and U-Haul International, Inc. ("U-Haul") filed an opposition to the MSJ. [Doc. No. 72.] Plaintiffs also filed a motion to deny or continue the MSJ. [Doc. No. 73.][1] On December 20, 2017, Defendants filed a reply to the opposition to the MSJ. [Doc. No. 77.] For the reasons set forth below, the motion for summary judgment is **DENIED**.

---

[1] The motion to deny or continue the MSJ [Doc. No. 73] is **HEREBY DENIED AS MOOT**.

1

FACTUAL BACKGROUND

In 2008, eMove sued HAH for, *inter alia*, improperly using its registered trademarks "Moving Help®" and "Moving Helper®" (the "Trademarks"). [Doc. No. 52 at 5-6, ¶¶25-26.] The 2008 litigation was ultimately settled and, in 2010, the parties entered into a settlement agreement (the "Settlement Agreement") and dismissed the 2008 litigation. [Doc. No. 52-3 at 2-3, 5, 7.]

The Settlement Agreement contains the following pertinent provisions:

> 3. <u>Trademarks</u>. U-Haul is the owner of the Trademarks, and has granted a license for the Trademarks to eMove. Respondents[2], on their own behalf and on behalf of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities and any entity in which any Respondent owns any interest in (other than an insubstantial amount of stock ownership of an entity that is publicly traded on the NASDAQ, NYSE or AMEX stock exchanges), interest in any trusts, interests in any estates, spouses, minor children, heirs, employees, agents, assigns and successors hereby covenant, stipulate and agree not to use the Trademarks in any manner (including any manner that might otherwise be deemed fair use of the trademarks "MOVING HELP" and "MOVING HELPER"). Respondents shall not allow any Service Provider, affiliate or other party to use the phrases "MOVING HELP" or "MOVING HELPER" on any portion of any website controlled or operated by Respondents. [Hereinafter referred to as the "Trademark provision."]
>
> 4. <u>Respondents' Acknowledgement of Claimants'[3] Intellectual Property Including the Payment </u>Code. Respondents hereby acknowledge Claimants' proprietary and ownership interest in the Trademarks, copyrights in Claimants' movinghelp.com website, trade secrets, Payment Code and Claimants' other Intellectual Property. Claimants hereby grant Hire a Helper a perpetual, fully paid up, noncancellable, world wide, nonexclusive, nontransferable, nonsublicenseable license to use Claimants' trade secrets that existed when Glanz was a service provider for eMove and to which Glanz had access. Said license is solely for the use of said trade secrets as such is currently being used on the hireahelper.com website. Said license does not include a license to use the Trademarks or the Payment Code. Said license shall become effective as of the Effective Date. Respondents shall

---

[2] "Respondents" are HAH and Glanz.
[3] "Claimants" are eMove and U-Haul.

2

17cv0535-CAB-JLB

discontinue all use of the Payment Code and Trademarks prior to the Effective Date. Said license shall terminate upon the breach of this Settlement Agreement by Respondents or upon an attempted assignment, sublicense or other transfer of this license by one or both Respondents. Respondents shall take reasonable steps to maintain the secrecy of Claimants' trade secrets. Other than the license granted in this Settlement Agreement, Respondents have no rights, title or interest in Claimants' Intellectual Property, including the Payment Code and Trademarks. Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petitioning to cancel any application, registration, or re-registration of the Trademarks). [Hereinafter the "Non-Opposition Clause."]

[Doc. No. 52-3 at 4.]

In February 2017, HAH filed a petition with a private arbitrator. [Doc. No. 52-4.] In the petition, HAH sought a declaration that its obligations under the Settlement Agreement relating to the Trademarks are unenforceable because the Trademarks are generic. [Doc. No. 52-4 at 6-9, ¶¶ 25-39.] The petition also sought declarations that (1) no trade secrets are covered by the Settlement Agreement, (2) certain unnamed parties are not bound by the Settlement Agreement, and (3) the Non-Opposition Clause is unenforceable. [*Id.* at 3-6 ¶¶ 9-24, 9-10 ¶¶ 40-46.]

Plaintiffs now sue Defendants for breach of contract and other claims, alleging that the filing of the petition breached the Non-Opposition Clause. Plaintiffs also seek declarations as to the rights and obligations of the parties under the Settlement Agreement.

PROCEDURAL BACKGROUND

On March 16, 2017, Plaintiffs filed a complaint for declaratory relief and to stay arbitration. [Doc. No. 1.] On May 2, 2017, Plaintiffs filed a First Amended Complaint ("FAC"). [Doc. No. 12.] On May 16, 2017, Defendants filed a motion to dismiss Count I of the FAC. [Doc. No. 21.] On August 30, 2017, the Court granted the motion to

dismiss Count I with leave to amend. [Doc. No. 51.] On September 19, 2017, Plaintiffs filed a Second Amended Complaint ("SAC"). [Doc. No. 52.]

The SAC asserts four causes of action against Defendants: (1) for breach of the Settlement Agreement; (2) for breach of the covenant of good faith and fair dealing during the performance of that Settlement Agreement; (3) for a declaratory judgment regarding the use of Plaintiffs' registered trademarks by Defendants and certain affiliates; and (4) for unfair competition. [Doc. No. 52 ¶¶ 57–83.]

Defendants answered the SAC and filed counterclaims. [Doc. No. 53 ¶¶ 14–36.] Defendants now bring this motion for summary adjudication of each of the causes of action in the SAC.

## LEGAL STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

A. Breach of the Settlement Agreement.

Defendants argue Count 1 for breach of contract should be adjudicated in favor of Defendants because no breach of the Settlement Agreement is alleged. First, Defendants argue that the filing of the petition with the private arbitrator was not a breach of Non-Opposition clause because the petition did not challenge the "use or registration" of the registered trademarks. In doing so, Defendants present a tortured interpretation of the Non-Opposition Clause that strains the plain language. At a minimum, the Non-Opposition clause is reasonably susceptible to Plaintiffs' interpretation.[4]

Defendants also argue that Plaintiffs waived the Non-Opposition Clause by pleading in this case that their trademarks are valid and enforceable, and cite to *United States v. Catalanotto*, 468 F.Supp. 503, 506 (D. Ariz. 1978). However, *Catalanotto* involves waiver in the attorney-client privilege context and is inapplicable here, where the parties contractually agreed to the Non-Opposition Clause and to the validity of the Trademarks. Defendant has provided no authority for the proposition that Plaintiffs' efforts to enforce the terms of the contract constitute waiver.

Next Defendants argue that the Non-Opposition Clause is unenforceable and cite to *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969). However, *Lear* involved the doctrine of patent licensee estoppel. The Ninth Circuit and other courts have held that, absent consumer injury, the public interest against confusion in the trademark context is outweighed by the interest in enforcing contracts and holding parties to the benefit of their bargain. *See Visa*

---

[4] The more poignant question is whether the filing of a petition with a private arbitrator, when the Settlement Agreement had no arbitration provision, constitutes a petition being brought "in any trademark office, court, administrative or other government body." Neither party, however, addressed this question.

*Int'l Serv. Assn. v. Bankcard Holders of Am.*, 784 F.2d 1472, 1473-74 (9th Cir. 1986)("a party entering into a settlement agreement with respect to a trademark will be held to his contract unless enforcement of the contract would result in injury to the public through confusion . . . .[O]nce confusion is found, and once such confusion is found to be harmless. . . .the policy of enforcing contracts will then predominate."); *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 103 F.Supp. 2d 711 (S.D.N.Y. 2000), *aff'd*, 294 F.3d 383, 395 (2d. Cir. 2002)("in order to obtain rescission of a freely bargained trademark contract, a party must show that the public interest will be significantly injured if the contract is allowed to stand").  Here, Defendants have made no showing of significant public injury.  Therefore, the Non-Opposition Clause is not void.

Finally, Defendants argue Plaintiffs have no evidence of damages.  However, Plaintiffs have provided supplemental interrogatory responses asserting that Defendants have damaged "Plaintiffs' brand, reputation, and goodwill," and that Plaintiffs are entitled "to some or all of the profits Defendants earned from the HAH enterprise." [Doc. No. 72-1 at 5 – 13.]  Thus, there is a triable issue of fact as to whether Plaintiffs have suffered damages.

B.  Breach of the Covenant of Good Faith and Fair Dealing.

Defendants argue Plaintiffs fail to state a claim for breach of the covenant of good faith and fair dealing. However, the SAC alleges, expressly or impliedly, that Defendants are attempting to use the legal process to nullify or modify certain provisions of the parties' Settlement Agreement in order to unfairly compete, thus preventing Plaintiffs from receiving the benefits that flow from the Agreement.  Under Arizona law, this is sufficient to state a claim for breach of the covenant of good faith and fair dealing.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002)(the "implied covenant of good faith and fair dealing" prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement; the duty arises by operation of law but exists by virtue of a contractual relationship).

C. Declaratory Judgment Regarding the Use of Plaintiffs' Registered Trademarks.

Defendants seek summary adjudication as to Count Three on the basis that the trademarks are generic as a matter of law, and that the requested declarations exceed the scope of the Settlement Agreement. [Doc. No. 63 at 16-22.] However, the question of the validity of the Trademarks, which includes whether they are generic, was the subject of the 2008 litigation and was settled by the Settlement Agreement. This Court will not adjudicate whether the Trademarks are generic.

The declarations sought by Plaintiffs essentially seek an adjudication of whether there was a meeting of the minds as to key terms in the Settlement Agreement. As set forth above, there are triable issues of fact as to what the parties intended as to the Non-Opposition and other clauses.

D. Unfair Competition.

Defendants argue that Plaintiffs fail to state a claim for unfair competition under Arizona law, which Defendants argue is limited to claims of passing off another's goods or services as one's own. [Doc. No. 63-1 at 26-27 (citations omitted).] However, the law does not appear to be so limited. *See Orca Commc'ns Unlimited, LLC v. Noder*, 337 P.3d 545, 547 (Ariz. 2014)(unfair competition claim permitted to the extent not based on misappropriating trade secrets); *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998)(citations omitted)(the "doctrine of unfair competition is based on principles of equity" and "[t]he general purpose of the doctrine is to prevent business conduct 'contrary to honest practice in industrial or commercial matters.'")

Here, Plaintiffs have alleged that Defendants' behaviors have been an attempt to "gain leverage in securing hoped-for modifications to the Settlement Agreement for the purposes of unfairly competing with Plaintiffs," "Defendants intentionally interfered with Plaintiffs' business in order to gain a competitive advantage for their company," and "Plaintiffs have suffered and continue to suffer irreparable damage to their business." [Doc. No. 52 at 4-12, ¶¶ 18-56, 79-83.] Therefore, Plaintiffs have sufficiently alleged a claim for unfair competition.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**.

Dated: March 20, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge