UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMOVE, INC., a Nevada corporation, and U-HAUL INTERNATIONAL INC., a Nevada corporation,<br><br>　　　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>HIRE A HELPER LLC, a California limited liability company, and MICHAEL GLANZ, an individual,<br><br>　　　　　　　　　　　　Defendants. | Case No.: 17cv0535-CAB-JLB<br><br>**ORDER REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [Doc. No. 137]** |

On April 27, 2018, Plaintiffs/Counter-Defendants eMove, Inc. and U-Haul International, Inc. ("eMove") filed a motion for summary judgment ("MSJ"). [Doc. No. 137.] On May 18, 2018, Defendants/Counter-Claimants Hire A Helper LLC ("HAH") and Michael Glanz ("Glanz") filed an opposition to the MSJ. [Doc. No. 150.] On May 25, 2018, Plaintiffs filed a reply to the opposition. [Doc. No. 155.] For the reasons set forth below, the motion for summary judgment is **DENIED** and summary adjudication of Counts I, II, and IV are **GRANTED IN FAVOR OF DEFENDANTS**.

FACTUAL BACKGROUND

In 2008, eMove sued HAH for, *inter alia*, improperly using its registered trademarks "Moving Help®" and "Moving Helper®" (the "Trademarks"). [Doc. No. 52 at 5-6, ¶¶25-26.] The 2008 litigation was ultimately settled and, in 2010, the parties entered into a settlement agreement (the "Settlement Agreement") and dismissed the 2008 litigation. [Doc. No. 52-3 at 2-3, 5, 7.]

The Settlement Agreement contains the following pertinent provisions:

> 3. <u>Trademarks</u>. U-Haul is the owner of the Trademarks, and has granted a license for the Trademarks to eMove. Respondents[1], on their own behalf and on behalf of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities and any entity in which any Respondent owns any interest in (other than an insubstantial amount of stock ownership of an entity that is publicly traded on the NASDAQ, NYSE or AMEX stock exchanges), interest in any trusts, interests in any estates, spouses, minor children, heirs, employees, agents, assigns and successors hereby covenant, stipulate and agree not to use the Trademarks in any manner (including any manner that might otherwise be deemed fair use of the trademarks "MOVING HELP" and "MOVING HELPER"). Respondents shall not allow any Service Provider, affiliate or other party to use the phrases "MOVING HELP" or "MOVING HELPER" on any portion of any website controlled or operated by Respondents. [Hereinafter referred to as the "Trademark provision."]
>
> 4. <u>Respondents' Acknowledgement of Claimants'[2] Intellectual Property Including the Payment</u> Code. Respondents hereby acknowledge Claimants' proprietary and ownership interest in the Trademarks, copyrights in Claimants' movinghelp.com website, trade secrets, Payment Code and Claimants' other Intellectual Property. Claimants hereby grant Hire a Helper a perpetual, fully paid up, noncancellable, world wide, nonexclusive, nontransferable, nonsublicenseable license to use Claimants' trade secrets that existed when Glanz was a service provider for eMove and to which Glanz had access. Said license is solely for the use of said trade secrets as such is currently being used on the hireahelper.com website. Said license does not include a license to use the Trademarks or the Payment Code. Said license shall become effective as of the Effective Date. Respondents shall

---

[1] "Respondents" are HAH and Glanz.
[2] "Claimants" are eMove and U-Haul.

discontinue all use of the Payment Code and Trademarks prior to the Effective Date. Said license shall terminate upon the breach of this Settlement Agreement by Respondents or upon an attempted assignment, sublicense or other transfer of this license by one or both Respondents. Respondents shall take reasonable steps to maintain the secrecy of Claimants' trade secrets. Other than the license granted in this Settlement Agreement, Respondents have no rights, title or interest in Claimants' Intellectual Property, including the Payment Code and Trademarks. Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petitioning to cancel any application, registration, or re-registration of the Trademarks). [Hereinafter the "Non-Opposition Clause."]

[Doc. No. 52-3 at 4.]

In February 2017, HAH filed a petition with a private arbitrator (hereinafter "the Petition"). [Doc. No. 52-4.] In the Petition, HAH sought a declaration that its obligations under the Settlement Agreement relating to the Trademarks are unenforceable because the Trademarks are generic. [Doc. No. 52-4 at 6-9, ¶¶ 25-39.] The Petition also sought declarations that (1) no trade secrets are covered by the Settlement Agreement, (2) certain unnamed parties are not bound by the Settlement Agreement, and (3) the Non-Opposition Clause is unenforceable. [*Id.* at 3-6 ¶¶ 9-24, 9-10 ¶¶ 40-46.]

Plaintiffs now sue Defendants for breach of contract and other claims, alleging that the filing of the Petition breached the Non-Opposition Clause. Plaintiffs also seek declarations as to the rights and obligations of the parties under the Settlement Agreement. Defendants have answered and counter-sued for declaratory relief.

PROCEDURAL BACKGROUND

On March 16, 2017, Plaintiffs filed a complaint for declaratory relief and to stay arbitration. [Doc. No. 1.] On May 2, 2017, Plaintiffs filed a First Amended Complaint ("FAC"). [Doc. No. 12.] On May 16, 2017, Defendants filed a motion to dismiss Count

3

17cv0535-CAB-JLB

I of the FAC. [Doc. No. 21.] On August 30, 2017, the Court granted the motion to dismiss Count I with leave to amend. [Doc. No. 51.] On September 19, 2017, Plaintiffs filed a Second Amended Complaint ("SAC"). [Doc. No. 52.]

The SAC asserts four causes of action against Defendants: (1) for breach of the Settlement Agreement; (2) for breach of the covenant of good faith and fair dealing during the performance of that Settlement Agreement; (3) for a declaratory judgment regarding the use of Plaintiffs' registered trademarks by Defendants and certain affiliates; and (4) for unfair competition. [Doc. No. 52 ¶¶ 57–83.]

Defendants answered the SAC and filed counterclaims ("Counterclaims") seeking (1) declarations regarding Defendants' duty under the Settlement Agreement to protect Plaintiffs' trade secrets and other confidential information; (2) declarations regarding the impact of the Settlement Agreement on parties who are or may become interested in HAH; and (3) a declaration that the final sentence of Paragraph 4 of the Settlement Agreement (the "Nonopposition Clause") is void. [Doc. No. 53 ¶¶ 14–36.]

On October 23, 2017, Plaintiffs filed a motion to dismiss all of Defendants' counter-claims and/or to strike Count III of Defendants' counterclaims. [Doc. No. 56.] On December 20, 2017, the motion was denied. [Doc. No. 78.] On November 22, 2017, Defendants filed a motion for summary judgment on Plaintiffs' SAC. [Doc. No. 63.] On March 20, 2018, the motion was denied. [Doc. No. 117.]

## LEGAL STANDARD

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477

4

17cv0535-CAB-JLB

U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (citing *Anderson*, 477 U.S. at 248).

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *See Celotex Corp.*, 477 U.S. at 322-323. If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

A. Breach of the Settlement Agreement.

Plaintiffs argue Defendants breached the Settlement Agreement by "filing the Petition and continuing to challenge eMove's Intellectual Property in this litigation." [Doc. No. 137-1 at 14.] As previously noted by this Court, the poignant question (which was never addressed in Defendants' previous motion for summary judgment) is whether filing a petition with a private arbitrator, when the Settlement Agreement had no arbitration provision, constitutes a petition being brought "in any trademark office, court, administrative or other government body." [Doc. No. 117 at 5.] Plaintiffs address this question in a footnote by citing generally to Arizona's arbitration statutes and to a law review article about arbitrations under Arizona law. [Doc. No. 137-1 at 10-11, n. 4.] However, regardless of whether Arizona's arbitration act "conferred power upon duly appointed arbitration tribunals to serve as the courts' adjuncts" [*Id.*], there was no "duly appointed arbitration tribunal" in this case. As Plaintiffs point out, Plaintiffs never agreed to an arbitration provision and, in fact, expressly rejected such a provision. [*Id.*] Therefore, by filing the Petition, Defendants were engaging in a fruitless, and perhaps incompetent, endeavor to seek clarification of the Settlement Agreement. But they did not breach the Settlement Agreement.

As Plaintiffs acknowledge, whether the filing of the Petition constituted a breach is a legal question. [Doc. No. 155 at 2.] A plain reading of the Non-opposition clause shows that the filing of the Petition was not a filing "in any trademark office, court, administrative or other government body." Therefore, while the filing of the Petition was perhaps annoying to Plaintiffs,[3] it was not a breach of the Non-opposition clause.

As for Defendants "continuing to challenge eMove's Intellectual Property in this litigation," such allegations are not part of the SAC. Moreover, Defendants' affirmative defenses and counter-claims in this case were filed in response to Plaintiffs' claims, and the counter-claims only seek declaratory relief as to the rights and obligations of the parties under the Settlement Agreement. *See Topps Chewing Gum, Inc. v. Fleer Corp.*, 799 F.2d 851, 856 (2nd Cir. 1986)(declaratory relief may be sought to resolve disputes regarding the meaning of terms in a contract). While some of the requested declarations may be foreclosed by the Settlement Agreement (e.g. because Defendants waived their rights to challenge the trademarks – generic or not), the counter-claims for declaratory relief in general are not foreclosed. As noted by Defendants, potential litigation over the Settlement Agreement was certainly anticipated, as the Settlement Agreement does contain choice of law, venue, and attorneys' fees provisions. Therefore, Plaintiffs' motion for summary adjudication of the breach of contract claim (Count I) is **DENIED**.

In addition, because the question of whether filing the Petition was a breach of the Settlement Agreement is a legal one, summary adjudication of the Plaintiffs' breach of contract claim (Count I) is **GRANTED IN FAVOR OF DEFENDANTS**. *See* Fed.R.Civ.P. Rule 56(g); *Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003)(no cross-motion need be filed for entry of summary judgment in

---

[3] Prior to the filing of the Petition, Defendants requested that Plaintiffs agree to various revisions of the Settlement Agreement, which Plaintiffs refused. [Doc. No. 137-1 at 12.] Plaintiffs do not argue, rightly so, that Defendants breached the Non-Opposition clause by requesting revisions to the Settlement Agreement. The Court views the filing of an ineffective Petition as similar to the request for revisions – annoying to Plaintiffs, but not a breach of the Settlement Agreement.

favor of the opposing party if there are no factual issues and moving party had notice and adequate opportunity to address the issue).[4]

B. Breach of the Covenant of Good Faith and Fair Dealing.

Under Arizona law, the "implied covenant of good faith and fair dealing" prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund,* 38 P.3d 12, 28 (Ariz. 2002). An action for breach of the covenant may sound in contract or in tort, but sustaining a tort claim requires a plaintiff to allege and prove a "special relationship between the parties arising from elements of the public interest, adhesion, of fiduciary responsibility." *Id* at 29. If a plaintiff attempts to make a bad faith claim in tort, but does not allege and prove the necessary special relationship to support a claim for breach of the implied covenant in tort, the claim fails. *Id.*

Plaintiffs argue that by filing the Petition and continuing to challenge the legitimacy of eMove's Trademarks and Trade Secrets, Defendants are preventing Plaintiffs from receiving the benefits of the Settlement Agreement. [Doc. No. 137-1 at 16.] However, filing the Petition was not a breach of the Settlement Agreement and did not, in and of itself, cause Plaintiffs to lose the benefits of the Settlement Agreement. Moreover, for the reasons set forth above, the counterclaims for declaratory relief in this action merely seek to clarify the rights and obligations of the parties, not prevent them from receiving the benefits.[5] Finally, Plaintiffs have made no showing of a special relationship. Therefore, Plaintiffs' motion for summary adjudication of the breach of the

---

[4] While the Court previously denied Defendants' motion for summary judgment on this claim, Defendants did not seek adjudication on the same grounds.

[5] Indeed, under Plaintiffs' logic, any party to a contract who files a claim for declaratory relief as to the meaning of a contract term could be said to be seeking to prevent the other party from receiving the benefits of the contract.

7

covenant claim (Count II) is **DENIED**; and summary adjudication is **GRANTED** in favor of Defendants on this claim.[6]

C. Unfair Competition.

In Arizona, the "doctrine of unfair competition is based on principles of equity" and "[t]he general purpose of the doctrine is to prevent business conduct 'contrary to honest practice in industrial or commercial matters.'" *Fairway Constructors, Inc. v. Ahern*, 970 P.2d 954, 956 (Ariz. Ct. App. 1998)(citations omitted). Plaintiffs argue that filing the Petition, and pursuing counter-claims here, are dishonest attempts to renege on the Settlement Agreement. However, as set forth above, the filing of the Petition, while ineffective, was not dishonest. Moreover, filing counterclaims here for declaratory relief as to the rights and obligations of the parties is certainly not an action that is "contrary to honest practice." *Id.* While Defendants may ultimately be unsuccessful in their counter-claims, that does not make the filing of the counter-claims unfair competition. Therefore, Plaintiffs' motion for summary adjudication of the unfair competition claim (Count IV) is **DENIED**; and summary adjudication is **GRANTED** in favor of Defendants on this claim.[7]

D. Count III and Counterclaims I, and II.

Plaintiffs argue they are entitled to summary adjudication of Count III and Counter-claims I and II for declaratory relief. However, at a minimum, there are triable issues of fact as to what the parties meant by "trade secrets" and "Claimants' other Intellectual Property." That being said, the Court reiterates its position that it will not adjudicate anything that was the subject of the previous litigation. It will only adjudicate whether there was a "meeting of the minds" as to key terms of the Settlement Agreement.

---

[6] While the Court previously denied Defendants' motion for summary judgment on this claim, Defendants did not seek adjudication on the same grounds.

[7] While the Court previously denied Defendants' motion for summary judgment on this claim, Defendants did not seek adjudication on the same grounds.

Therefore, Plaintiffs' motion for summary adjudication of Count III and Counter-claims I and II is **DENIED**.

E. Counter-claim III.

This Court previously denied Defendants' motion for summary adjudication that the Non-Opposition Clause was unenforceable because there was no showing of significant public injury. [Doc. No. 117 at 6.] Defendants now claim to have such evidence. [Doc. No. 150 at 16.] The Court will defer review of this evidence until after it decides related *Daubert* motions on this evidence. Therefore, Plaintiffs' motion for summary adjudication of Counter-claim III is **DENIED WITHOUT PREJUDICE**.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment is **DENIED**, and summary adjudication of Counts I, II and IV is **GRANTED IN FAVOR OF DEFENDANTS.**

This case is now limited to claims and counter-claims for declaratory relief and will be set for a bench trial. All further pretrial dates and filings are **HEREBY VACATED**. A status conference will be held on **July 10, 2018** at **10:00 a.m.** in Courtroom 4-C to discuss further proceedings and reset dates.

Dated: June 29, 2018

Hon. Cathy Ann Bencivengo
United States District Judge