1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMOVE, INC., a Nevada corporation, and U-HAUL INTERNATIONAL INC., a Nevada corporation,<br><br>                      Plaintiffs,<br><br>v.<br><br>HIRE A HELPER LLC, a California limited liability company, and MICHAEL GLANZ, an individual,<br><br>                      Defendants. | Case No.: 17cv0535-CAB-JLB<br><br>**ORDER REGARDING (1) MOTION FOR DISMISSAL OF COUNTS I AND II OF THE COUNTERCLAIM [Doc. No. 192]; (2) JURY TRIAL ISSUES [Doc. Nos. 190, 191]; (3) REQUIRING ATTENDANCE AT SETTLEMENT CONFERENCE; (4) SETTING TRIAL DATE** |

On August 17, 2018, Defendants HIRE A HELPER LLC ("HAH") and MICHAEL GLANZ filed a motion to dismiss Counts I and II of the Counterclaim without prejudice. [Doc. No. 192.] On September 14, 2018, Plaintiffs EMOVE, INC. and U-HAUL INTERNATIONAL INC. filed an opposition. [Doc. No. 195.] On September 21, 2018, Defendants filed a reply to the opposition. [Doc. No. 196.] For the reasons set forth below, the Court tentatively dismisses Counts I and II of the Counterclaim <u>with</u> prejudice, reserves on the question of attorneys' fees and costs until the conclusion of the case, and allows Defendants the opportunity to withdraw the motion for dismissal.

## BACKGROUND

After a year of motion practice, this case is now a declaratory relief action with the following counts and requested declarations:

<u>Plaintiffs' Count III (regarding Section 3 of the Settlement Agreement ("SA")):</u>[1]

Plaintiffs seek the following declarations:

That Glanz and HAH are obligated to ensure that:

1. All parties listed in the first part of Section 3 of the SA, including a future employer of Glanz that otherwise falls under one of the categories, do not use the registered Trademarks Moving Help and Moving Helper in any manner;

2. No other parties, including a future employer of Glanz, uses Plaintiffs' registered Trademarks Moving Help and Moving Helper "on any portion of any website controlled or operated by" either HAH or Glanz;

3. Defendants and their attorneys, officers, agents, affiliates, directors, members, managers, subsidiaries, servants, employees, and any and all other persons acting in concert or participating with Defendants cannot use these or any confusingly similar marks in advertising or promotion of services covered by United States Trademark Nos. 2,903,640 and U.S. Reg. No. 3,323,962.

/ / / / /

/ / / / /

---

[1] Section 3 states: <u>Trademarks</u>. U-Haul is the owner of the Trademarks, and has granted a license for the Trademarks to eMove. Respondents, on their own behalf and on behalf of their affiliates, corporations, partnerships, limited liability companies, proprietorships, entities and any entity in which any Respondent owns any interest in (other than an insubstantial amount of stock ownership of an entity that is publicly traded on the NASDAQ, NYSE or AMEX stock exchanges), interest in any trusts, interests in any estates, spouses, minor children, heirs, employees, agents, assigns and successors hereby covenant, stipulate and agree not to use the Trademarks in any manner (including any manner that might otherwise be deemed fair use of the trademarks "MOVING HELP" and "MOVING HELPER"). Respondents shall not allow any Service Provider, affiliate or other party to use the phrases "MOVING HELP" or "MOVING HELPER" on any portion of any website controlled or operated by Respondents.

<u>Defendants Counterclaim 1 (involving Section 4 of SA):</u>[2]

Defendants seek the following declarations:

1. [Defendants] do not possesses any of [Plaintiffs'] trade secrets;
2. There are no trade secrets belonging to [Plaintiffs] covered by the SA;
3. [Defendants] are not obligated to maintain as confidential any matters as [Plaintiffs'] alleged trade secrets pursuant to the SA or otherwise;
4. HireAHelper's current website does not use or contain any of Plaintiffs' trade secrets.

The Court has already ruled that it will not adjudicate what is or is not a trade secret under the law. It will only rule as to what the parties understood that term to mean. The Court has also ruled that it will not adjudicate whether HAH is misappropriating any trade secrets, as Plaintiffs have chosen not to bring such a claim. Therefore, Declarations 1 and 4 will not be adjudicated.

/ / / / /

/ / / / /

---

[2] Section 4 states: <u>Respondents' Acknowledgement of Claimants' Intellectual Property Including the Payment Code</u>. Respondents hereby acknowledge Claimants' proprietary and ownership interest in the Trademarks, copyrights in Claimants' movinghelp.com website, trade secrets, Payment Code and Claimants' other Intellectual Property. Claimants hereby grant Hire a Helper a perpetual, fully paid up, noncancellable, world wide, nonexclusive, nontransferable, nonsublicenseable license to use Claimants' trade secrets that existed when Glanz was a service provider for eMove and to which Glanz had access. Said license is solely for the use of said trade secrets as such is currently being used on the hireahelper.com website. Said license does not include a license to use the Trademarks or the Payment Code. Said license shall become effective as of the Effective Date. Respondents shall discontinue all use of the Payment Code and Trademarks prior to the Effective Date. Said license shall terminate upon the breach of this Settlement Agreement by Respondents or upon an attempted assignment, sublicense or other transfer of this license by one or both Respondents. Respondents shall take reasonable steps to maintain the secrecy of Claimants' trade secrets. Other than the license granted in this Settlement Agreement, Respondents have no rights, title or interest in Claimants' Intellectual Property, including the Payment Code and Trademarks. Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petitioning to cancel any application, registration, or re-registration of the Trademarks).

<u>Defendants' Counterclaim II</u>

Defendants seek the following declarations:

1. Those who are owners of all or any part of HireAHelper's equitable interests including without limitation Fidelity, and other than Glanz, are not parties to the SA and are not bound by it. Those not bound include all current and future limited liability company members of HireAHelper, and owners of its stock if it should ever be converted to a corporation, other than Glanz.
2. Any party that purchases all or any part of HAH's assets, other than Glanz, are not parties to the SA and are not bound by it.
3. If HAH sells or transfers its principal assets to a successor corporation, the latter is a successor to the SA and is bound by it if:
   a. there is an express or implied agreement of assumption;
   b. the transaction amounts to a consolidation or merger of the two corporations;
   c. the purchasing corporation is a mere continuation or reincarnation of the seller; or
   d. the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts, and do not contend otherwise.

/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /
/ / / / /

<u>Defendants' Counterclaim III (regarding Non Opposition Clause ("NOC")):</u>[3]

Defendants seek the following declarations:

1. The NOC is void and unenforceable as against public policy, as purporting to prevent the appearance and participation in government process in the United States Patent and Trademark Office, any other patent or trademark office, court, administrative or other government body;

2. The NOC is void and unenforceable as unintelligible, vague, ambiguous and overbroad;

3. The NOC is void and unenforceable because it would purport to prevent Defendants from using and prosecuting intellectual property rights with respect to Defendants' own intellectual property if Plaintiffs were to attempt to claim, use or prosecute protection or registration of Defendants' intellectual property as Plaintiffs' own;

4. Plaintiffs waived the NOC, at least as to Plaintiffs' alleged trademarks, by filing their original complaint, FAC and SAC in this action putting at issue the validity and enforceability of Plaintiffs' alleged trademarks, and the rights and obligations of Defendants and Plaintiffs with respect to the alleged trademarks.

## DISCUSSION REGARDING MOTION TO DISMISS

Defendants seek dismissal of Counts I and II of the Counterclaim without prejudice and without conditions pursuant to Fed. R. Civ.P. 41(a)(2), which states:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the

---

[3] The NOC states: Respondents agree not to oppose, challenge, or petition against the use or registration of, in any country, in any trademark office, court, administrative or other government body Claimants' Intellectual Property (including the Payment Code) or Trademarks (including petitioning to cancel any application, registration, or re-registration of the Trademarks).

> plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

Fed. R. Civ. P. 41(a)(2).

As Plaintiffs point out [Doc. No. 195 at 10], and Defendants later concede [Doc. No. 196 at 8], given that Defendants are only seeking dismissal of two out of the three counterclaims, the proper vehicle to dispose of Counts I and II is a Fed.R.Civ.P. 15 motion for leave to amend the counterclaim to omit those counts. *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 687-88 (9th Cir. 2005); *see also Klay v. United Healthgroup*, 376 F.3d 1092, 1106 (11th Cir. 2004). Nevertheless, this Court may treat HAH's motion as one under Rule 15. *Klay*, 376 F.3d at 1106-07.

"[W]hether [the] motion is made under Rule 15 or Rule 41(a)(2), the choice of rules is largely a technical one" because both rules leave the final decision to the court's discretion. *Mgmt. Inv'rs v. United Mine Workers of Am.*, 610 F.2d 384, 394 n.22 (6th Cir. 1979). The primary focus for the Court's determination under either rule is whether the other party will suffer prejudice. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted); *Westlands Water Dist. v. United States*, 100 F.3d 94, 96 (9th Cir. 1996).

In that regard, there are four factors courts analyze to determine whether to grant a motion for leave to amend a pleading under Rule 15: (1) undue delay, (2) bad faith, (3) futility of amendment, (4) prejudice to the opposing party. *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). These factors are not weighted equally; "delay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *Id.* "Prejudice is the 'touchstone of the inquiry under Rule 15(a).'" *Aspeon, Inc.*, 316 F.3d at 1052. Similarly, the standard for whether a court should dismiss an action under Rule 41(a)(2) is whether the other party will suffer "plain legal prejudice." *See,*

*e.g.*, *Westlands Water Dist.*, 100 F.3d at 96.

Likewise, the Court may impose conditions under either rule in order to alleviate or mitigate any prejudice. *See, e.g.*, Fed. R. Civ. P. 41(a)(2) ("an action may be dismissed at the plaintiff's request only by court order, *on terms that the court considers proper*"); *MCI Telecomms. Corp.*, 66 F.3d at 1513-14 ("district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend").

Here, Defendants claim they asserted Counterclaim I because they wanted "an understanding of what it is that Plaintiffs claim to be Plaintiffs' trade secrets" so Defendants could determine that they were not using them. [Doc. No. 192-1 at 4.] Defendants argue that, once the attorneys-eyes-only ("AEO") designation that formerly applied to the alleged trade secrets was lifted, they were able to understand what constitutes the alleged trade secrets and be satisfied they were not using them. [Doc. No. 192 at 6.] However, as Plaintiffs point out, the AEO designation was lifted on May 16, 2017, which was before Defendants filed counterclaim. [Doc. No. 195 at 8.] Thus, it appears there was no need to assert Count I, and certainly no need to proceed with the counterclaim for over a year. In the meantime, Plaintiff incurred the expense of defending against the counterclaim. As to Count II, there is no reasonable justification for pursuing it after June 2017. Therefore, the Court finds undue delay by Defendants and prejudice to Plaintiffs.

In addition, given that this is now the third round of litigation for the parties, there is certainly a threat of future litigation should Counts I and II be dismissed without prejudice. Therefore, the Court will allow dismissal of Counts I and II but only if they are dismissed with prejudice. Any fee- or cost-shifting issues are reserved and will be disposed of with respect to the case as a whole at its end.

If Defendants are not amenable to these conditions, they may withdraw their motion. *See Lau v. Glendora Unified Sch. Dist.*, 792 F.2d 929, 930 (9th Cir. 1986)(for a Rule 41(a)(2) dismissal, the district court must provide the plaintiff "a

reasonable period of time within which to refuse the conditional voluntary dismissal by withdrawing [the] motion for dismissal or to accept the dismissal despite the imposition of conditions.")[4] Therefore, the Court will give Defendants until **October 12, 2018** to withdraw their motion.

## DISCUSSION REGARDING JURY TRIAL

The parties have filed briefs on whether any of the issues implicate the right to a jury trial. [Doc. Nos. 190, 191.] Upon review of the briefs and relevant pleadings, the Court finds that the right to a jury is implicated only in Counterclaim I and only with regard to what the parties to the S.A. meant by "trade secrets" and "Claimant's Intellectual Property." All other issues and claims will be adjudicated in a bench trial.

## CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED:**

Defendants have until **October 12, 2018**, to withdraw their motion to dismiss Counts I and II of the Counterclaim. If the motion is withdrawn, then this case shall proceed to a bench trial with regard to Plaintiff's Count III and Defendants' counterclaims I, II and III, except that the issue of what the parties understood to encompass "trade secrets" and "Claimant's Intellectual Property" in the S.A. (in Counterclaim I) shall be presented to a jury.

If the motion is not withdrawn, then: (1) Counts I and II of the Counterclaim are dismissed with prejudice; (2) any fee- or cost-shifting issues are reserved and will be disposed of with respect to the case as a whole at its end; and (3) the case shall proceed to a bench trial with regard to Plaintiffs' Count III and Defendants' Counterclaim III.

---

[4] The parties did not provide any authority that this option to withdraw also applies to Rule 15 motions. Nevertheless, given that the analyses under Rule 41 and Rule 15 are essentially the same, the Court will provide Defendants with an opportunity to withdraw their motion.

**IT IS FURTHER ORDERED** that, in either scenario, trial shall commence on **December 11, 2018** at **8:45 a.m**.

**IT IS FURTHER ORDERED** that, on or before **November 21, 2018**, the parties shall participate in another settlement conference before Magistrate Judge Burkhardt. The parties **SHALL CONTACT** the chambers of Magistrate Judge Burkhardt by **October 3, 2018**, to schedule the settlement conference.

**IT IS SO ORDERED**.

Dated: September 27, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge